Estes, J.
In this action the trial court made written findings and rulings, which state the case in detail, to wit:—
“This is an action of tort. The plaintiff’s declaration in Count 2 alleges in substance that on or about January 6, .1936 the defendant was the keeper of a certain dog and that, while the plaintiff was in the exercise of due care at Dedham on or about such date, he was attacked and bitten by the dog and theréby suffered personal injury. Count 1, which alleges ownership of the dog in. the defendant, was waived during the trial.
*191 The answer of the defendant is a general denial and that the plaintiff was trespassing upon the property of the defendant at the time of the alleged assault and further that the plaintiff did tease, torment and abuse the animal alleged to have committed the assault.
Upon conflicting evidence and view taken of the premises hereinafter mentioned, I find that the plaintiff while on the premises of the defendant at No. 60 Violet Avenue, in the town of Dedham, on the sixth day of January, 1936, about 9.30 o’clock in the forenoon, was bitten in the calf of his left leg by a dog of which the defendant admitted that he was the keeper, under the following circumstances.
The plaintiff, aged twenty-three years, was at the time in the employ of the Dedham Water Company, as a reader of water meters and at the time of trial had been in such employ for about seven years. It was his duty to visit the premises of water takers in the town of Dedham of which the defendant was one, for the purpose of reading the water meters, such visits being made quarter-annually. The premises in question consisted of a two family residence with adjoining yard fronting on Violet Avenue. There was but one water meter for the premises. The defendant and his wife, Katherine Brickman, occupied the upstairs apartment and a tenant occupied the lower or ground floor apartment. The water meter was located in the cellar of the house just inside the bulkhead entrance. The bulkhead was of the usual type with folding doors, slanting over a flight of stairs that lead to a door at the cellar floor. The plaintiff had visited these premises to take the reading of the water meter about four times a year for about seven years and he remembered seeing the dog there in the back yard once before the day that he was bitten. On the day in question, in the performance of his duty and following a given route, he reached the premises of the defendant, entered the same from Violet Avenue, proceeded along the side of the house to the point where the bulkhead was located, opened the bulkhead doors, descended the stairs and entered the cellar and took the water meter reading and then ascended the stairs to the yard level.
*192 As he opened the bulkhead doors to descend and went inside the dog was standing “almost right beside” him and the dog just barked but didn’t touch him at the time. • The dog was right at the edge of the bulkhead when the plaintiff came out and attacked the plaintiff when he stooped over to close the bulkhead and bit him as above stated, without warning and without provocation on the part of the plaintiff.
The defendant made written application to the Dedham Water Company on April 20, 1929, for water service to connect with the premises in question which contained a signed statement to the effect that he agreed to comply with the rules and regulations governing the use of water service as then or at any future time established by the Dedham Water Company.
A regulation of the Dedham Water Company in effect at the time of the assault by the dog is as follows: “The officers or agent of the company may enter the premises of any water taker to examine meter or fixtures. ’ ’ This regulation with others, which are not in question, appeared on the back of a bill for water introduced in evidence which was for the period from January 1, to December 31, 1935 and which was paid by the defendant on December 16, 1935.
The plaintiff testified that he was instructed by his employer to go to the back door of premises when he was in the performance of his duties and ring the bell and go in; that the back door of the premises in question was right around the corner of the house, beyond the bulkhead, which was located on the side of the house; that a flight of three or four stairs lead to the back door; that he had used that door to go to the cellar on previous occasions but sometimes used the bulkhead which was the easiest way to get to the cellar ; that on this occasion the bulkhead door was open; that he didn’t ask anyone if he could go through the bulkhead and that nobody told him he could go in there; that he thought that the' defendant, (who was in the yard, about twenty to twenty-five feet away) knew him that he had gone in that way many times; that on this occasion he had not been to either front or back door of house and had not rung any bell; that his instructions were to go to the back door in every *193 case; that when he could not get into the bulkhead he went in by the back door; that he was down in the cellar about two minutes; that he recalled going to the house during the first year that he was reading water meters and that the back door was open; that he told them what he wanted and went through the house and down into the cellar; that after that he went through the bulkhead and always followed that course; that he was never told by the defendant and his wife to go in the bulkhead, nor had he asked them; that the tenant downstairs told him probably six or seven years back that he could go in that way (through the bulkhead) and that on that occasion he went and rang the bell and it was the way they told him to go and that he had entered the bulkhead many times.
Considerable evidence was introduced in the course of the trial as to events which occurred subsequent to the time when the plaintiff was bitten by the dog and with respect to which there was a decided conflict between the parties but which I find not to be material on the issue of liability except on the question of the credibility of the plaintiff as to which it has been .given proper consideration. There were inconsistencies in the plaintiff’s testimony also but I do not find that they were material in affecting his credibility on the essential facts above set forth.
I find and rule in the light of all the facts herein set forth that the plaintiff was not a trespasser nor a bare licensee but had the status of an invited person and was in the .exercise of due care at the time that he was attacked by the dog.
As indicated above the plaintiff suffered personal injuries in consequence of the dog bite and damages are assessed for such injuries in the sum of $232.50 as above stated.
Action with respect to the requests for rulings of law submitted by the parties is taken as follows: (Action taken is indicated only as to requests pertinent to this report).
Defendant’s requests numbered four, six, fifteen and twenty-five denied.”
The defendant’s requests denied by the court were:—
*194 “Request No. 4. Upon the plaintiff’s evidence by which the plaintiff is bound, the plaintiff at the time of the alleged biting was a trespasser on the premises of the defendant.
Request No. 6. Upon all the evidence, the plaintiff has failed to satisfy the burden of proof that at the time of the alleged biting he was not a trespasser on the defendant’s premises.
Request No. 15. Upon the plaintiff’s evidence by which the plaintiff is bound, the plaintiff at the time of the alleged biting was at best a bare licensee.
Request No. 25. Provision No. 4 in the ‘Regulations’ of the Dedham Water Company did not operate as between the defendant and plaintiff to make the plaintiff more than a trespasser or bare licensee so far as the alleged use of the bulkhead to gain admission to the defendant’s premises was concerned.”
This action is based on G. L. (Ter. Ed.), Ch. 140, §155, as amended by the Acts of 1934 Ch. 320, §18. Prior to the passage of this latter act one who was bitten by a dog had to prove only the defendant was the owner or keeper of the dog, and that he (the plaintiff) was in the exercise of due care. Ryan vs. Marren, 216 Mass. 556. Spellman vs. Dyer, 186 Mass. 176. Since the enactment of said Ch. 320, §18 the defendant may show in defense that the plaintiff was a trespasser, or was teasing or tormenting the dog. In the instant case the defendant contends that the plaintiff was a trespasser, or that the plaintiff’s conduct was such that it amounted to teasing or tormenting the dog. Much of the defendant’s argument is addressed to the point ■that, if, as the defendant maintains, the plaintiff was not an invitee, the plaintiff cannot recover except it is shown the defendant was guilty of wilful, wanton or reckless misconduct. This action, however, is not on the common law right to recover for such misconduct of the defendant. It is brought on the liability created by the Statute. See Zink vs. Foss, 221 Mass. 73. But, unlike the decision in Gallagher *195 vs. Wheeler, 1935 Mass. Adv. Sh. 2615, December 23, 1935 based on liability created by General Laws (Ter. Ed.) Ch. 89, §5, before the amendment by Acts of 1936 Chapter 49, the Supreme Judicial Court has repeatedly held that the lack of due care of the plaintiff can be shown as a defense. See Ryan vs. Marren, Supra and Spellman vs. Dyer, Supra. In the case at bar the court found the plaintiff was in the exercise of due care, and “that the plaintiff was not a trespasser nor a bare licensee but had the status of an invited person.” The defendant argues that this case falls within the class of decisions like Aldworth vs. Woolworth Co., 1936 Mass., Advanced Sheets 1657 and cases cited.
It is clear, and impliedly conceded by the defendant, that if the plaintiff was an invitee he had a good cause of action. It is also admittedly clear that if the plaintiff was a trespasser he cannot recover under the statute, but would have to fall back on his common law remedy, as in Zink vs. Foss, Supra, and prove wilful, wanton or reckless misconduct by the defendant.
The defendant argues, however, that if the plaintiff was. neither a trespasser or invitee, 'but was a licensee then, also, the plaintiff is obliged to resort to his common law remedy and prove wilful, wanton or reckless misconduct by the defendant, as in Aldworth vs. Woolworth Co. Supra, and similar cases. With this we cannot agree. As stated before this action is based on the statutory liability. A licensee is not one who comes within the exceptions of those to whom the defendant is liable for injuries caused by his dog, unless it can be shown he was teasing or tormenting the dog. This would apply likewise to an invitee. The court has held the plaintiff was in the exercise of due care, consequently it cannot be said he was teasing or tormenting the dog. Negligence of the defendant is not: an issue. *196 There is nothing in the finding from which wilful, wanton or reckless misconduct by the defendant can be inferred.
The issue then is what was the status of the plaintiff. If he was an invitee there is no error in the rulings and finding. If he was a trespasser the rulings were error, and finding must be ordered for the defendant. If he was a licensee in the exercise of due care we are of the opinion he can recover, and the error in ruling and finding he was not a bare licensee, but was an invitee, has not been harmful to the defendant and the finding must stand.
The finding shows that when the plaintiff entered the bulkhead the defendant was near and did not object to the use of the bulkhead for entrance to the basement where the plaintiff had to go to read the water meter.
- Olearly the plaintiff had a license from the defendant to go on the premises to read the meter. It could easily be found that, by the application that water be furnished him, the defendant impliedly invited the agents of the water company to come on his premises to read the meter. It is true the plaintiff’s employer gave instructions to go to the back door and ring the bell. We do not think his using another door would constitute him a trespasser.
The facts of this case we think, distinguish it from Walsh vs. Brown, 194 Mass. 317. It comes closer to the decisions in Beers vs. McGinnis, 191 Mass. 279, and see Feeley vs. Andrews, 191 Mass. 313. And where, as here, the defendant saw, or was in a position where he presumably saw, the plaintiff use the bulkhead that act did not make him a trespasser. The law concerning animals that are by nature ferocious is so well established it is not necessary to discuss that phase concerning the reason the law renders one liable for damages of the animal owned or kept by him.
*197 Undoubtedly the plaintiff had the right to enter on the premises. Up to the time he used the bulkhead he was at least a licensee. That he did not follow his employer’s instructions to go to the back door we think does not convert him into a trespasser, particularly under the circumstances here shown. Not following the instructions of his employer is far different than being forbidden by the defendant to use the bulkhead. From the added circumstances that the defendant' presumably saw the plaintiff enter the bulkhead it could be inferred that the defendant acquiesced in its use.
.We are consequently of the opinion that the plaintiff was no less than a licensee, and that there was no harmful error in the findings and rulings. See Lincoln Park Garage vs. Devonshire Financial Service Corporation, 277 Mass. 303 at 305.
The order, therefore, is
Report Dismissed.