**DICEON ELECTRONICS, INC., Plaintiff,**

**v.**

**CALVARY PARTNERS, L.P., Calvary Holdings, Inc., Calvary Partners, Inc., James R. Arabia, and Bernice H. Feicht, Defendants.**

**Civ. A. No. 90–753–JLL.**

United States District Court, D. Delaware.

Aug. 22, 1991.

Kenneth J. Nachbar of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for plaintiff.

Jesse A. Finkelstein and Mark A. Morton of Richards, Layton & Finger, Wilmington, Del., and Wilson, Sonsini, Goodrich & Rosati of Palo Alto, Cal., of counsel, for defendants Calvary Partners, L.P., Calvary Holdings, Inc., Calvary Partners, Inc., and James R. Arabia.

Bruce M. Stargatt of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for defendant Bernice H. Feicht.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

This action was brought by the plaintiff Diceon Electronics, Inc. against the defendants Calvary Partners, L.P.; Calvary Holdings, Inc.; Calvary Partners, Inc.; James R. Arabia; and Bernice H. Feicht (collectively "Calvary"). The plaintiff seeks damages and injunctive relief against the defendants based upon their alleged violations of §§ 13(d), 14(a), 14(d) and 14(e) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C.A. §§ 78m(d), 78n(a), 78n(d) and 78n(e) (1981 & Supp.1991), and the Rules promulgated thereunder. (Second Amended and Supplemental Complaint, Docket Item ["D.I."] 25). The plaintiff also seeks damages based on pendent state law claims which allegedly arise from the defendants' efforts to gain control of Diceon by means of a fraudulent tender offer and proxy contest. (D.I. 25).

This action is presently before the Court on the defendants' motion to dismiss the plaintiff's action pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), and for mootness. The defendants aver that: (1) due to corrective filings they are no longer in violation of the securities laws, and (2) the plaintiff has not clearly stated any claim for relief that can be granted under §§ 13(d), 14(a), 14(d) or 14(e) of the 1934 Act, or under common law fraud. (D.I. 27, 34 & 63). After having heard oral argument on August 15, 1991 and considered the briefs of the parties, the Court will deny the defendants' motion to dismiss.

## I. JURISDICTION

The plaintiff has sufficiently alleged jurisdiction in this Court pursuant to 28 U.S.C. §§ 1331, 1337 and § 20 of the 1934 Act. (D.I. 25 at ¶ 7). If one of the plaintiff's

federal securities law claims survives this motion to dismiss, the Court may take pendent jurisdiction of the plaintiff's state law fraud claim. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 106 (3d Cir. 1990).

## II. THE COURT'S LIMITED FACTUAL INQUIRY UNDER Fed.R.Civ.P. 12(b)(6)

### A. *Fed.R.Civ.P. 12(b)(6) Generally*

Since no answers have yet been filed in this action, the defendants' motion is properly a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). For purposes of this motion, all facts alleged in the plaintiff's complaint must be taken as true. On a motion to dismiss the Court is free to take judicial notice of certain facts that are of public record if they are provided to the Court by the party seeking to have them considered. *MGIC Indem. Corp. v. Weisman,* 803 F.2d 500, 504 (9th Cir.1986); *Phillips v. Bureau of Prisons,* 591 F.2d 966, 969 (D.C.Cir.1979); 2A J. Moore, *Moore's Federal Practice* ¶ 12.07[2.–5], at 12–68 (2ed.1991); *see also Huntt v. Gov't of the Virgin Islands,* 339 F.2d 309, 310 (3d Cir.1964). Securities and Exchange Commission ("SEC") filings fall within this category of public records that can be judicially noticed. *Kramer v. Time Warner, Inc.,* 937 F.2d 767 (2d Cir.1991) (On a 12(b)(6) motion court may consider SEC filings because judicial notice of such filings is appropriate under Fed.R.Evid. 201(b)(2) and they are not admitted for their truth.); *cf. Massachusetts v. Westcott,* 431 U.S. 322, 323 n. 2, 97 S.Ct. 1755, 1756 n. 2, 52 L.Ed.2d 349 (1977) ("[R]ecords of the Merchant Vessel Documentation Division of the Coast Guard ... may be judicially noticed."); *see generally* Fed.R.Evid. 201(b)(2) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is ... capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

### B. *The Factual Allegations in the Complaint and Assertions Made by the Defendants*

In its complaint the plaintiff alleges that the defendants have violated §§ 13(d), 14(a), 14(d) and 14(e) of the 1934 Act and the SEC Rules promulgated thereunder and that they continue to violate all but § 14(a). (D.I. 25).

Section 14(a) of the 1934 Act deals with the solicitation of proxies. Diceon has alleged that beginning on or about December 26, 1990 the defendants attempted to solicit proxies by means of false and misleading statements in violation of § 14(a) (D.I. 25 at ¶¶ 11, 15 & 16), and that Diceon, as a result, was forced to spend money to oppose these solicitations. Diceon's efforts were successful. At the annual meeting held on January 23, 1991 Diceon's management received proxies for more than 80% of the outstanding shares of Diceon. (*Id.* at ¶ 18). The proxy contest is now over.

The section 13(d), 14(d) and 14(e) claims pertain to the defendants' allegedly fraudulent tender offer. According to the complaint, the defendants made several material misstatements and omissions in connection with this tender offer. (D.I. 25). Though some of the omissions were remedied as of January 4, 1991 (*Id.* at ¶¶ 44, 45, 55, 56, 62, 65 & 75), several others have not yet been corrected. (*Id.* at ¶ 44 & 55). Since the tender offer is still outstanding (*Id.* at ¶ 14), these alleged violations are continuing.

The defendants however, assert in their briefs that they are now in full compliance with the securities laws. This bald assertion of fact is made without documentary evidence, such as copies of the defendants' amended SEC filings.[1] Though the Court

---

1. While the defendants assert that they are now in full compliance with applicable disclosure requirements, they have failed to cite evidence of this compliance in the public record. What the Court may consider on a Rule 12 motion is limited; nonetheless, the defendants have failed to even make use of those materials that could have been considered, most notably, the amended SEC filings. The Court is thus left to its own devices to search through a feeble smattering of

could have considered such filings on a motion to dismiss, if provided by the parties, the absence of such evidence will not affect the Court's determination of the present motion. While it is true that updated SEC filings would have shown the Court that certain information had been disclosed by the defendants, the Court would nonetheless be unable to determine from the filings whether additional information was improperly kept secret. Under these circumstances the Court cannot conclude, as a matter of law, that there is no set of facts by which the plaintiff can sustain the claims in its complaint. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *accord Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989). Accordingly, for purposes of this motion, the Court must assume: (1) that the defendants are in continuing violation of §§ 13(d), 14(d) and 14(e) of the 1934 Act and the SEC rules promulgated thereunder, and (2) that the defendants, at some point in the past, violated § 14(a) of the 1934 Act, and the rules promulgated thereunder. The Court, however, cannot end its inquiry here.

## III. THE PLAINTIFF'S COMMON LAW FRAUD CLAIM

■ The plaintiff has also pled a common law action for fraud against the defendants. (D.I. 58 at ¶¶ 7, 20, 22 & 23). For purposes of this motion, the Court concludes that the plaintiff's fraud claim satisfies the pleading requirements of Fed. R.Civ.P. 8(a) and 9(b).

The complaint indicates that the defendants made a tender offer for Diceon that was conditioned on the defendants obtaining financing, and hinged on their receiving sufficient proxies to install a new board of directors and amend the by-laws. According to the complaint, the defendants had no intention of consummating this tender offer and knew that it could not be financed. Instead, the defendants expected that the tender offer would induce shareholders to tender proxies in favor of the defendants, and that they would thus be able to gain control of Diceon without having to purchase any of the tendered shares, ostensibly due to a lack of financing. In its complaint, the plaintiff provides more specific facts and thus sufficiently alleges fraud. (*Id.* at ¶ 16). The Court will therefore not dismiss the plaintiff's common law fraud claim unless all of the plaintiff's federal causes of action are dismissed and it appears that the Court can no longer retain pendent jurisdiction over the state law claim.

■ The Court notes that under Delaware law damages are an available remedy for fraud. *Hegarty v. American Commonwealths Power Corp.,* 19 Del.Ch. 86, 163 A. 616, 619 (1932). If, therefore, the Court has jurisdiction over one of the plaintiff's federal securities law claims, the plaintiff may be able to recover damages under a pendent state law fraud claim.

## IV. IMPLIED CAUSES OF ACTION UNDER SECTIONS 13(d), 14(a), 14(d) AND 14(e) OF THE SECURITIES AND EXCHANGE ACT OF 1934

### A. The General Standard for Determining the Existence of an Implied Right of Action under the Securities Laws

Diceon seeks both damages and equitable relief, but the provisions of the 1934 Act upon which Diceon's federal claims rest do not explicitly permit private enforcement. The Court will therefore have to determine whether under §§ 13(d), 14(a), 14(d) or 14(e): (1) there is an implied private right of action, and (2) a target issuer such as Diceon has standing to raise such

documentary evidence from which it is expected to glean the information actually disclosed to the SEC by Calvary. Frankly, the defendants' contention that they are now in full compliance with SEC filing requirements and are therefore entitled to a dismissal of the plaintiff's com-

plaint, without proof by reference to the filings themselves, borders on the frivolous. Further, though not relevant to the present motion, the plaintiff now contends that additional omissions and misstatements have surfaced during the course of discovery. (D.I. 58 at 6 n. 3).

claims.[2] The Supreme Court has established guidelines the lower courts are expected to use when they address these questions.

In *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975) the Supreme Court set out the following with respect to implied rights of action:

> In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff one of the class for whose *especial* benefit the statute was enacted,—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the states, so that it would be inappropriate to infer a cause of action solely on federal law?

(citations and internal quotes omitted). The four factored test of *Cort v. Ash* is applicable to implied private rights of action under the securities laws. *Piper v. Chris–Craft Indus., Inc.*, 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977). The four factors, however, should not be applied with equal weight. The most important consideration is legislative intent. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979).[3] Lastly, an accurate determination of legislative intent must take into consideration the "contemporary legal context" in which Congress acted. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 378–79, 102 S.Ct. 1825, 1839,

72 L.Ed.2d 182 (1982). It is therefore important to recognize that §§ 13(d), 14(d) and 14(e) have a legislative history separate and distinct from other provisions of the 1934 Act such as § 14(a). Sections 13(d), 14(d) and 14(e) are part of the Williams Act which, in 1968, added new substantive provisions to the 1934 Act. The Williams Act was primarily concerned with the rising use of tender offers in contests for corporate control. Section 14(a), on the other hand, regulates proxy solicitations.

B. *Whether an Implied Right of Action for Damages or Equitable Relief Exists under Section 13(d) of the 1934 Act and the Standing of a Target Corporation to Bring Such a Suit*

1. Whether an Implied Right of Action Exists under Section 13(d) of the 1934 Act

In *Jacobs v. Pabst Brewing Co.*, 549 F.Supp. 1050, 1059–63 (D.Del.1982) this Court exhaustively addressed the legislative intent behind § 13(d) of the 1934 Act as amended by the Williams Act. In *Jacobs* the Court concluded that an implied private right of action for injunctive and equitable relief exists under § 13(d) for shareholders of a target corporation. The Court did not reach the issue of whether damages could be recovered in such an action. Six years later, in *Rubin v. Posner*, 701 F.Supp. 1041, 1049–51 (D.Del. 1988) Judge Farnan held that there is no implied private right of action for damages under § 13(d) of the 1934 Act. The question still remains whether a target issuer, such as Diceon, has standing to bring a private right of action for injunctive and equitable relief under § 13(d) of the 1934 Act.[4]

---

**2.** The Court will use the terms "target issuer," "target company," and "target corporation" interchangeably to denote a company in Diceon's position, namely, a company that is the subject of either a tender offer or proxy contest, or both.

**3.** *Touche,* 442 U.S. at 575, 99 S.Ct. at 2489.

It is true that in *Cort v. Ash,* the Court set forth four factors that it considered "relevant"

in determining whether a private remedy is implicit in a statute not expressly providing one. But the Court did not decide that each of these factors is entitled to equal weight. The central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action.

**4.** In *Energy Ventures, Inc. v. Appalachian Co.,* 587 F.Supp. 734, 742–44 (D.Del.1984), this Court had before it a § 13(d) claim brought by a

2. The Standing of a Target Company to Sue under Section 13(d)'s Implied Right of Action for Injunctive and other Equitable Relief

■ As already noted, § 13(d) does not provide an explicit cause of action for violations of its provisions. The Supreme Court, however, has recognized that under certain circumstances, the Williams Act should be interpreted to allow implied rights of action by particular litigants. These circumstances were discussed in the Supreme Court's decision in *Piper*, 430 U.S. 1, 97 S.Ct. 926.

> This Court has nonetheless held that in some circumstances a private cause of action can be implied with respect to the 1934 Act's antifraud provisions, even though the relevant provisions are silent as to remedies.

> The reasoning of these holdings is that, where congressional purposes are likely to be undermined absent private enforcement, private remedies may be implied in favor of the particular class intended to be protected by the statute.

430 U.S. at 25, 97 S.Ct. at 941 (citations omitted). The Court has already recognized an implied right of action under § 13(d) for shareholders of a target corporation, but whether such a right of action should be extended to target corporations themselves depends upon whether such an extension is necessary to further the congressional purpose behind the Williams Act generally and § 13(d) specifically. The task of determining the congressional intent behind the Williams Act was begun by the Supreme Court in *Piper*.

In *Piper* the Supreme Court explained: "The legislative history ... shows that the sole purpose of the Williams Act was the protection of investors who are confronted with a tender offer." *Piper*, 430 U.S. at 35, 97 S.Ct. at 946. Having established that shareholders are the intended beneficiaries of the Williams Act, the Supreme Court went on to add that:

> As a disclosure mechanism aimed especially at protecting shareholders of target corporations, the Williams Act cannot consistently be interpreted as conferring a monetary remedy upon regulated parties, particularly where the award would not redound to the direct benefit of the protected class.

*Id.* at 39, 97 S.Ct. at 948. So, not only are the shareholders the sole intended beneficiaries of the Act, the conferral of any benefit on a regulated person would be contrary to the legislative intent. This observation is particularly important because the Williams Act was intended to curb abusive conduct by both tender offerors and the management of target corporations. *Id.* at 24–30, 97 S.Ct. at 940–44. Congress did not want the Williams Act to be used as a weapon by either tender offerors or management in battles for the control of corporations. *Id.* The legislature was intent, therefore, on ensuring that the Williams Act would apply even-handedly and not favor either management or tender offerors. *Id.*

Yet, despite these concerns with maintaining a "level playing field" between management and tender offerors, the driving purpose of the Williams Act remained the provision of necessary information to shareholders faced with a tender offer. *Id.* at 17, 30–31, 97 S.Ct. at 937, 944. For the reasons discussed below, this Court concludes that permitting a target company to bring a private right of action for injunctive and other equitable relief furthers the intentions of Congress in enacting § 13(d) and does not significantly favor either management or tender offerors.

Section 13(d) imposes disclosure requirements on any person who acquires more than five percent of any class of a registered security. The disclosures called for must be sent to the *issuer*, each exchange where the securities are traded, and the SEC. *Id.* The language of § 13(d), therefore, does not require that the party disclosing the information provide it to shareholders. The issuer, to whom the disclo-

---

target issuer. Though the opinion strongly suggests that a target issuer has standing to sue for equitable relief under § 13(d), the Court did not

decide the issue and instead denied the target issuer's motion for a preliminary injunction on unrelated grounds.

sures must be made, is therefore in the best position to protect the interests of the shareholders and implement the congressional purpose. For this very reason, the Second Circuit held that Congress must have intended that a target issuer have standing to seek injunctive and equitable remedies through a private right of action under § 13(d). *GAF Corp. v. Milstein*, 453 F.2d 709, 719–20 (2d Cir.1971), *cert. denied*, 406 U.S. 910, 92 S.Ct. 1610, 31 L.Ed.2d 821 (1972) ("GAF, as the issuer, unquestionably is in the best position to enforce section 13(d)."). Further, giving an issuer the power to sue to seek corrective disclosures and other equitable remedies does not significantly "tip the playing field" in favor of either management or a tender offeror. It merely ensures that the tender offeror will not have an unfair advantage in contests for corporate control. The Court's conclusion that an implied private right of action for equitable relief is appropriate under § 13(d) of the 1934 Act is also supported by the weight of authority.

The Fourth, Fifth, Seventh and Ninth Circuits have all explicitly recognized that a target corporation has standing to bring a private right of action for injunctive and equitable relief under § 13(d) of the 1934 Act. *Dan River, Inc. v. Unitex Ltd.*, 624 F.2d 1216, 1222–24 & n. 5 (4th Cir.1980), *cert. denied*, 449 U.S. 1101, 101 S.Ct. 896, 66 L.Ed.2d 827 (1981); *Gearhart Indus., Inc. v. Smith Int'l, Inc.*, 741 F.2d 707, 714 (5th Cir.1984); *Indiana Nat. Corp. v. Rich*, 712 F.2d 1180 (7th Cir.1983); *Portsmouth Square, Inc. v. Shareholders Protective Comm.*, 770 F.2d 866, 871 n. 8 (9th Cir. 1985). Without actually addressing the issue of whether a target corporation has standing to seek injunctive and equitable relief under § 13(d), the First and Eighth Circuits have upheld grants of such relief. *General Aircraft Corp. v. Lampert*, 556 F.2d 90 (1st Cir.1977); *Chromalloy Am. Corp. v. Sun Chemical Corp.*, 611 F.2d

240 (8th Cir.1979). And while the Eleventh Circuit has held that a target corporation lacks standing under § 13(d) to seek the divestiture of a tender offeror's shares, or an injunction of its voting rights, *Liberty Nat. Ins. Holding Co. v. Charter Co.*, 734 F.2d 545, 565 (11th Cir.1984), a target issuer does have standing under § 13(d) to seek corrective disclosures from a tender offeror. *Florida Commercial Banks v. Culverhouse*, 772 F.2d 1513 (11th Cir.1985).

■ The Third Circuit's opinion in *Polaroid Corp. v. Disney*, 862 F.2d 987 (3d Cir. 1988), though not addressing § 13(d) further supports the Court's present holding. In *Polaroid*, the Third Circuit held that a target corporation has standing to seek injunctive relief by means of a private right of action under § 14(e) of the 1934 Act. Section 14(e), like § 13(d), was added to the 1934 Act by the Williams Act. The reason given by the Third Circuit for this holding was that the target corporation was in the best position to enforce the rights of the shareholders who are the ultimate beneficiaries of the Williams Act. *Id.* at 1003. This logic would appear to be even more applicable to the § 13(d) situation where the statute does not even require that the disclosure be made to the shareholders.[5]

#### C. *Diceon's Claim for Equitable Relief under § 14(d)*

As already discussed, the Williams Act was intended by Congress to serve a variety of purposes, the most important of which was to provide shareholders with accurate information concerning tender offers. *Supra* at B–2. The inquiry into legislative history, however, cannot begin and end with only a discussion of the general principles behind the act. A key element in determining legislative intent is the language of the statute itself; a factor that varies with each section's unique language.

---

**5.** As indicated in the above discussion of *Polaroid Corp. v. Disney*, 862 F.2d 987 (3d Cir.1988), a target corporation such as Diceon has standing to pursue an implied private right of action for injunctive and other equitable relief under § 14(e) of the 1934 Act. This Court will similarly so hold. However, since the parties agreed at

oral argument that damages are not available to Diceon under the Williams Act, and the plaintiff no longer seeks such damages (D.I. 68 at 2), the Court will not address the issue of whether a damage remedy is available to a target company under § 14(e) of the 1934 Act. The Court will not further address Diceon's § 14(e) claim.

The existence of an implied right of action for equitable relief in favor of target companies under §§ 13(d) and 14(e) does not necessarily mean that such a right of action exists under § 14(d). The Court however does not have to reach the issues of standing and available remedies under § 14(d).

Diceon no longer seeks damages under § 14(d), and the parties, in any event, agree that no such remedy is available. With respect to the issue of equitable remedies, all of the equitable relief sought in the plaintiff's complaint could be granted by the Court under §§ 13(d) and 14(e); namely, (1) ordering the defendants to make corrective disclosures pursuant to § 13(d) (D.I. 25 at 18, ¶ A), (2) enjoining the defendants' tender offer or other acquisitions of Diceon stock for a period of thirty days after corrective disclosures have been made (*Id.* at 18, ¶ B), (3) barring future violations of the securities laws by the defendants (*Id.* at 18, ¶ C), and (4) granting whatever other relief the Court believes is appropriate. (*Id.* at 18, ¶ E).[6] The Court therefore finds it unnecessary to address the issues of standing and relief under § 14(d).[7]

### D. Diceon's Claims Pertaining to Proxy Violations under § 14(a) of the 1934 Act

Shareholders have an implied right of action under § 14(a) of the 1934 Act whether they sue in their individual capacities or derivatively. *J.I. Case Co. v. Borak,* 377 U.S. 426, 431, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1964); *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *see also Virginia Bankshares, Inc. v. Sandberg,* —— U.S. ——, ——, 111 S.Ct. 2749, 2761, 115 L.Ed.2d 929 (1991). The remedies available to such litigants are broad and can include injunctive relief, monetary damages, costs and reasonable attorney's fees. *Borak,* 377 U.S. at 433, 84 S.Ct. at 1560; *Mills,* 396 U.S. at 389, 90 S.Ct. at 624. The question before the Court, however, is whether a target corporation has standing to bring such a suit for damages.[8]

In the present action, the plaintiff Diceon was allegedly forced to engage in a proxy fight with the defendants that was

---

**6.** Specifically, in its complaint Diceon seeks the following relief:

(A) Requiring defendants to file statements on Schedule 13D fully setting forth all information and including as exhibits all documents required by Section 13(d) of the 1934 Act and the rules and regulations promulgated thereunder;

(B) Enjoining defendants, and their respective officers, employees, agents, partners, subsidiaries or affiliates, and all other persons acting in concert with or on behalf of any of the defendants, directly or indirectly, from acquiring shares of stock of Diceon, through any purported tender offer or otherwise, until at least thirty days after dissemination of complete and accurate securities filings;

(C) Permanently enjoining defendants, and their officers, employees, agents, partners, subsidiaries or affiliates, and all other persons acting in concert with or on behalf of any of the defendants, directly or indirectly, which bars them from future violations of federal securities laws;

(D) Awarding damages in favor of plaintiff; and

(E) Granting such other and further relief as may be just and proper.

(D.I. 25 at 18, ¶ 76).

**7.** The Court notes that at least two courts have permitted target company standing under § 14(d). The Eleventh Circuit, in *Florida Commercial Banks v. Culverhouse,* 772 F.2d 1513 (11th Cir.1985) held that a target issuer had standing to sue for corrective disclosures under § 14(d) of the 1934 Act. The Court reached this conclusion after weighing the benefit to the shareholders of such a remedy against its possible abuse by management and other harm it could cause shareholders. 772 F.2d at 1519. In *Koppers Co. v. American Express Co.,* 689 F.Supp. 1371, 1384 (W.D.Pa.1988), the court went a step further than the *Culverhouse* court and held that a target company has standing under § 14(d) to seek injunctive relief to prevent a tender offer. The only authority for this holding, however, is *Culverhouse* itself.

**8.** The issue of whether a target company can seek injunctive and other equitable remedies under § 14(a) is not before the Court. The proxy contest is over, the incumbent management remains in control of Diceon, and there is no indication that another proxy contest is likely. Therefore, of the remedies sought by the plaintiff, only damages are possibly available under § 14(a). (D.I. 25 at 18). In any event, it does not appear from the complaint that the plaintiff seeks equitable relief under § 14(a).

made more expensive by the defendants' use of fraudulent solicitations. Diceon claims that under these circumstances, an issuer has an implied right of action for damages under § 14(a) of the 1934 Act because it is entitled to recoup the costs of defending against a fraudulent proxy solicitation. Any discussion of whether Diceon has an implied right of action under § 14(a) of the 1934 Act must begin with the Supreme Court's opinion in *Borak.*

In *Borak* the Supreme Court unambiguously held that an implied private right of action for damages and other remedial relief is available for violations of § 14(a). *Id.* at 431–32, 84 S.Ct. at 1559. The Court further held that this implied private right of action is applicable "to both derivative and direct causes." *Id.* at 431, 84 S.Ct. at 1559. The reason the Court gave for extending this implied cause of action to derivative suits was explained in the following words:

> The injury which a stockholder suffers from corporate action pursuant to a deceptive proxy solicitation ordinarily flows from the damage done the corporation, rather than from the damage inflicted directly upon the stockholder. The damage suffered results not from the deceit practiced on him alone but rather on the stockholders as a group. To hold that derivative actions are not within the sweep of the section would therefore be tantamount to a denial of private relief.

*Id.* at 432, 84 S.Ct. at 1560. Though *Borak* involved a suit brought by an individual investor, the plaintiff argues that its rationale is equally applicable to suits brought by a target corporation. The argument is that if a shareholder can sue under § 14(a) to protect the interests of the target corporation, certainly the corporation itself must be able to sue under § 14(a).[9] As the Second Circuit noted: "If ... the Securities Act authorizes a stockholder to assert such a claim on the corporation's behalf, as held

in *Borak,* it must also authorize the corporation to do so on its own." *Studebaker Corp. v. Gittlin,* 360 F.2d 692, 695 (2d Cir.1966).

There is other authority that supports the proposition that a target company has standing to sue for equitable remedies under § 14(a). *General Time Corp. v. Talley Indus., Inc.,* 403 F.2d 159, 161 (2d Cir. 1968), *cert. denied,* 393 U.S. 1026, 89 S.Ct. 631, 21 L.Ed.2d 570 (1969); *Greater Iowa Corp. v. McLendon,* 378 F.2d 783, 794 (8th Cir.1967) (citing *Studebaker*); *Ameribanc Investors Group v. Zwart,* 706 F.Supp. 1248, 1251–54 (E.D.Va.1989) (drawing analogies between § 14(a) and 14(e) without recognizing the divergent congressional purposes behind the two sections); *Calumet Indus., Inc. v. MacClure,* 464 F.Supp. 19, 28 (N.D.Ill.1978) (citing *General Time*); *Bound Brook Water Co. v. Jaffe,* 284 F.Supp. 702, 705 (D.N.J.1968) (citing *Borak* and *Studebaker*). None of these cases however, except perhaps *Ameribanc,* holds that a target company has standing to sue for damages under § 14(a), and all of them rely on *Borak* in one way or another. This latter point is important because, as will be discussed, the supposed holding of *Borak,* that a target issuer has standing under § 14(a) is increasingly suspect.

Contributing to the debate over the bounds of an implied right of action under § 14(a) is the Supreme Court's admonition in *Borak* that "it is the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose." *Id.* at 433, 84 S.Ct. at 1560. This language has generally been understood to mean that the Courts should liberally construe private rights of action under the 1934 Act.

Finally, the plaintiff cites *CNW Corp. v. Japonica Partners, L.P.,* Civil Action No. 89–125–LON, slip op. (D.Del. Nov. 5, 1990), wherein Chief Judge Longobardi declined to dismiss a § 14(a) claim for damages by a

---

9. *Ameribanc Investors Group v. Zwart,* 706 F.Supp. 1248, 1252–53 n. 8 (E.D.Va.1989) (In holding that a target company has standing to sue, the district court noted: "*Borak* may be viewed as having implicitly approved this conclusion by its explicit approval of shareholder derivative suits. In some states, notably Delaware, a corporation may assume the prosecution of a shareholder derivative suit. In these circumstances, the company's standing would not be in doubt.") (citations omitted).

target issuer. In *CNW* the court relied heavily on the Supreme Court's decision in *Borak*, ultimately concluding that *"Borak* directs federal courts to be liberal in granting remedies under section 14(a) and [therefore] ... [the target issuer]'s claim for damages will not be dismissed." *Id.* at 11. But the CNW court also noted that the issue before it was one of first impression and that there is "no precedent which suggests [the target issuer]'s damages are not recoverable under section 14(a)." *Id.* at 10. Since that time, the Supreme Court has warned lower courts not to interpret *Borak* too broadly, and has thus cast some doubt on the holding of *CNW*.

First, the Third Circuit has implicitly rejected the plaintiff's argument that since *Borak* allowed a recovery of damages in a derivative suit, it must have intended a similar remedy in actions by injured corporations. While addressing the legislative intent behind the Williams Act and the All Holders Rule promulgated therefrom, the Third Circuit, in *Polaroid,* stated:

> That *Borak* allowed a shareholder derivative suits (sic) to vindicate shareholder rights under § 14(a) of the Exchange Act (regulating proxies) is not to the contrary. Although technically brought as a suit by the corporation, the shareholder derivative suit is, in substance, not a corporate suit against a third party but rather a shareholder suit against those in control of the corporation. The inference that the Congress that passed the Williams Act [which was passed shortly after *Borak*] intended to allow target corporations to sue in situations such as the All Holders Rule [because of *Borak* ] is weak at best.

*Polaroid,* 862 F.2d at 1001 n. 10. (citations omitted). Based on *Polaroid* it appears that, as far as the Third Circuit is concerned, the holding of *Borak* should be limited to suits brought by shareholders. *Borak* is not in itself authority for the proposition that a target issuer has standing to sue under § 14(a).

The Supreme Court's recent decision in *Virginia Bankshares* has cast additional doubt on the standing of an issuing corporation to sue under § 14(a). Though the *Virginia Bankshares* decision dealt with "causation" under § 14(a), the Court did note that its holding in *Borak* was limited. "Borak did not itself ... define the class of plaintiffs eligible to sue under § 14(a). But its general holding [is] that a private cause of action was available to some *shareholder* class...." *Virginia Bankshares,* —— U.S. at ——, 111 S.Ct. at 2761 (citations omitted and emphasis added). This position is supported by the language of *Borak* itself. Writing for the Court in *Borak,* Justice Clark stated:

> We consider only the question of whether ... [the 1934] Act authorizes a federal cause of action for rescission or damages to a corporate stockholder with respect to a consummated merger which was alleged to contain false and misleading statements violative of § 14(a) of the Act. This being the sole question raised by petitioners in their petition for certiorari, we will not consider other questions subsequently presented.

377 U.S. at 428, 84 S.Ct. at 1558. Therefore, while the Supreme Court reaffirmed the holding of *Borak* in *Virginia Bankshares,* it noted that *Borak* only addressed suits by shareholders. The Court then went on to add that any new extension of *Borak* would be looked upon disfavorably.

> The object of our enquiry does not extend further to question the holding of either *Borak* or *Mills* at this date, any more than we have done so in the past. Our point is simply to recognize the hurdle facing any litigant who urges us to enlarge the scope of action beyond the point reached in *Mills."*

—— U.S. at ——, 111 S.Ct. at 2764 n. 11 (citations omitted).

In a dissent in *Virginia Bankshares* written by Justice Kennedy and joined by Justices Marshall, Blackmun and Stevens, the dissenters similarly noted that the Court had limited *Borak.*

> To the extent the Court's analysis considers the purposes underlying § 14(a), it does so with the avowed aim to limit the cause of action and with undue emphasis upon fears of "speculative claims and

procedural intractability." The result is a sort of guerrilla warfare to restrict a well-established implied right of action. If the analysis adopted by the Court today is any guide, Congress and those charged with enforcement of the securities laws stand forewarned that unresolved questions concerning the scope of those causes of action are likely to be answered by the Court in favor of defendants.

— U.S. at ——, 111 S.Ct. at 2770 (dissenting opinion of Justice Kennedy).

Holding that a target issuer has standing to bring a cause of action for damages under § 14(a) would be an impermissible extension of *Borak* and other case law. Such an extension would also appear to be contrary to the legislative intent behind § 14(a).

A review of the case law addressing the purpose of the 1934 Act's proxy provisions indicates that Congress intended to curb misleading proxy solicitations by both outside third parties and incumbent management. "The purpose of § 14(a) is to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation (sic)." *Borak*, 377 U.S. at 431, 84 S.Ct. at 1559. Section 14(a) was not enacted for the "especial benefit" of management, but rather, was intended to curb their abuse of the proxy solicitation process.

Through § 14(a) Congress sought to ensure the flow of accurate information to stockholders confronted by a proxy solicitation.

[S]ection [14(a)] stemmed from the congressional belief that fair corporate suffrage is an important right that should attach to every equity security bought on a public exchange. It was intended to control the conditions under which proxies may be solicited with a view to preventing the recurrence of abuses which ... had frustrated the free exercise of the voting rights of stockholders. Too often proxies are solicited without explanation to the stockholder of the real na-

ture of the questions for which authority to cast his vote is sought.

*Borak*, 377 U.S. at 431, 84 S.Ct. at 1559 (citations and internal quotes omitted). Denying a corporation standing to sue for damages under § 14(a) would not appreciably hinder this purpose because management can be expected to oppose misleading proxy solicitations by third parties, with or without § 14(a). This Court believes that § 14(a) was intended to apply primarily in those situations where corporate democracy is most likely to fail, namely, where management, unopposed, solicits proxies. The Court concludes that an issuer lacks standing to sue for damages under § 14(a).

### E. *Irreparable Harm*

 Equitable relief may be available to the plaintiff under §§ 13(d) and 14(e) of the 1934 Act due to the defendants' continuing violations of the securities laws arising from their ongoing tender offer. In *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 95 S.Ct. 2069, 45 L.Ed.2d 12 (1975) the Supreme Court held that a plaintiff seeking equitable relief under the securities laws must establish those factors traditionally required for equitable relief. The most significant consideration is whether the plaintiff will suffer irreparable harm if the equitable relief is not granted. Put differently, the Supreme Court requires that "the usual basis for injunctive relief, that there exists some cognizable danger of recurrent violation," be present. 422 U.S. at 59, 95 S.Ct. at 2076 (citations and internal quotes omitted). That is clearly the case here where the defendants' allegedly fraudulent tender offer is still outstanding.

The *Rondeau* Court however, also noted that "an adequate remedy by way of an action for damages ... negat[es] the basis for equitable relief." 422 U.S. at 60, 95 S.Ct. at 2077. Diceon seeks damages under its pendent state law claim for the expenses it incurred opposing the defendants' proxy contest and other past expenses. The injunctive relief available to Diceon pertains to the ongoing tender offer. The plaintiff, therefore, is seeking separate remedies for separate harms. With respect to the ongoing tender offer,

the plaintiff does not have an adequate remedy at law and may be entitled to equitable relief.

## V. CONCLUSION

The plaintiff's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) will be denied because Diceon has adequately alleged claims upon which relief can be granted. Diceon properly seeks equitable relief under §§ 13(d) and 14(e) of the 1934 Act with respect to an ongoing tender offer, and damages under pendent state law claims for expenses it incurred defending against the defendants' deceptive proxy solicitation, and other related costs. An order will be entered in accordance with this opinion.