COURT OF CHANCERY
OF THE
STATE OF DELAWARE

JOHN W. NOBLE
VICE CHANCELLOR

417 SOUTH STATE STREET
DOVER, DELAWARE 19901
TELEPHONE: (302) 739-4397
FACSIMILE: (302) 739-6179

July 3, 2014

Kevin W. Gibson, Esquire
Gibson & Perkins P.C.
1326 King Street
Wilmington, DE  19801

John D. Balaguer, Esquire
White and Williams LLP
824 N. Market Street, Suite 902
Wilmington, DE  19801

William J. Cattie, III, Esquire
Rawle & Henderson LLP
300 Delaware Avenue, Suite 1015
Wilmington, DE  19801

Re:  *CCC Atlantic, LLC v. Grey*
C.A. No. 8739-VCN
Date Submitted:  February 19, 2014

Dear Counsel:

Plaintiffs, CCC Atlantic, LLC ("CCC") and Karman Development Group, LLC ("Karman Development"), brought claims against Defendants and Third-Party Plaintiffs Joseph Grey, Esq. ("Grey") and his law firm, Cross & Simon, LLC ("C&S"), arising from Grey's and C&S's representation of CCC in a bankruptcy

proceeding in Delaware.[1]  CCC owned certain condominium units in Linwood, New Jersey, and Karman Development developed those units and managed the complex.  CCC owed an outstanding loan balance of $41 million to certain lenders.  In 2011, a tax abatement program ended, which resulted in CCC's lenders making payments out of the real estate tax escrow account and created a shortfall in the account.  CCC apparently proposed a plan to pay back that shortfall and sought to negotiate with its lenders, but they instead declared the loan to be in default.

In January 2012, the lenders' trustee filed a complaint in the United States District Court for the District of New Jersey against CCC seeking foreclosure of, and the appointment of a receiver for, the Linwood property.  The court agreed that appointment of a receiver would be appropriate.  In reaching its conclusion, it found that "the value of the mortgaged CCC is less than the amounts due and owing under the Note and Mortgage."[2]  It determined that an affidavit from a loan servicing officer was more persuasive than an affidavit from CCC's managing member, in which she explained that she was advised that more than $7 million in

---

[1] CCC, Karman Development, and C&S are all Delaware limited liability companies.  The facts are drawn from Plaintiffs' Verified Complaint in Equity ("Compl.") ¶¶ 1-38.
[2] *Id.* ¶ 18.

equity existed in CCC. The parties to the litigation had not exchanged any appraisals or provided appraisals to the court. CCC was represented by Kevin J. Silverang, Esq. ("Silverang"), Philip S. Rosenzweig, Esq. ("Rosenzweig"), and their law firm, Silverang, Donohoe, Rosenzweig & Haltzman, LLC ("SD")[3] (collectively, the "Third-Party Defendants").

When it appeared that it would be unable to avoid the appointment of a receiver, CCC retained Grey and filed a voluntary petition for relief under Chapter 11 in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). In January 2013, the lenders moved to dismiss the bankruptcy action, arguing that it was a single asset bankruptcy with no "real" creditors aside from the lenders and that the bankruptcy had been filed in bad faith because the mortgage debt on the property exceeded the property's value.[4] The lenders submitted a March 2012 appraisal to support their argument that the property had less value than the outstanding mortgage debt. Defendants apparently

---

[3] SD is a Pennsylvania limited liability company.
[4] Compl. ¶¶ 22-23.

had a November 2011 appraisal of the property (the "Appraisal") demonstrating that its value exceeded the mortgage debt.

The Bankruptcy Court heard the parties' arguments on the motion to dismiss on February 6, 2013. Plaintiffs claim that Defendants, over Plaintiffs' express instructions, did not introduce the Appraisal to rebut the lenders' argument that the amounts due on the property exceeded its value. The court, when ruling from the bench, chastised CCC's counsel for not introducing appropriate documentation of the property's value. The Bankruptcy Court dismissed CCC's bankruptcy proceeding on February 8, 2013. On February 15, 2013, a receiver was appointed in the New Jersey proceeding; the order authorizing the receiver to act on CCC's behalf became effective on February 26, 2013.

Plaintiffs allege that CCC provided to Grey all the documents necessary to file a confirmable plan of reorganization shortly after the Chapter 11 petition was filed. Grey apparently advised CCC that a plan of reorganization did not need to be filed until 90 days after the Chapter 11 filing. CCC contends that this was a grave error; if the judge presiding over the bankruptcy proceeding had the plan, it argues, he would have denied the lenders' motion to dismiss or would have

delayed ruling while the plan options were considered. CCC asserts that, in the absence of such information, the Bankruptcy Court was constrained to dismiss CCC's bankruptcy effort. After the bench ruling, Grey sought to bring the Appraisal to the court's attention, but his attempt to re-open the record failed.

\* \* \*

Plaintiffs now assert claims for legal malpractice, breach of fiduciary duty for holding $125,000 from a settlement in another lawsuit in C&S's escrow account, conversion of those funds, and injunctive relief against Grey and C&S. Grey and C&S filed a counterclaim against CCC seeking legal fees for their representation in the bankruptcy proceeding. They also filed a third-party complaint against the Third-Party Defendants.[5] Grey and C&S claim contribution or indemnification from Third-Party Defendants, contending that their conduct in the New Jersey receivership action is the proximate cause of Plaintiffs' damages.

Grey and C&S have moved to dismiss, or for summary judgment on, Karman Development's claims because Grey and C&S never acted as Karman Development's counsel and thus owed it no duties. Grey and C&S have moved to

---

[5] Defs.' and Third-Party Pls.' Verified Answer to Verified Compl., Countercl. and Third-Party Compl.

dismiss, or for summary judgment on, CCC's claims for breach of fiduciary duty, conversion, and injunctive relief. They argue that CCC lacks standing to recover the $125,000 held in a C&S escrow account because it has no claim to that sum, that no action for conversion of money may be sustained, and that Plaintiffs have pled no grounds supporting injunctive relief. SD moved for judgment on the pleadings, asserting that Grey and C&S lacked standing to assert the claims in their third-party complaint against SD. The Court grants Defendants' motion to dismiss CCC's fiduciary duty claim. The dismissal of Plaintiffs' equitable claim raises the question of whether the Court should retain subject matter jurisdiction, an issue that should be addressed separately.

\* \* \*

Defendants have moved to dismiss, or for summary judgment on, CCC's breach of fiduciary duty claim under Court of Chancery Rules 12(b), 17(a), and 56. A motion to dismiss will be denied if a plaintiff's well-pled factual allegations entitle her to relief under a "reasonably conceivable" set of circumstances. The Court will accept well-pled facts as true and draw all reasonable inferences in favor

of the non-moving party.[6]  The Court may consider an extrinsic document if it is integral to the plaintiff's claim and is incorporated into the complaint.[7]

Plaintiffs contend that Grey breached the fiduciary duties he owed to CCC when he refused to turn over $125,000 of settlement proceeds from a separate dispute in New Jersey.[8]  Plaintiffs allege that while the other lawsuits were pending, CCC had "ongoing litigation with a number of contractors who failed to repair the Property's roof in a workman-like manner."[9]  The contractors agreed to settle that litigation with the $125,000 settlement payment.[10]  Defendants argue that CCC lacks standing to bring a fiduciary duty claim because CCC has no cognizable interest in the $125,000.  They contend that other parties had interests senior to CCC which thereby extinguished CCC's claim to the funds.  Specifically, they assert that the receiver order was effective on February 26, 2013 and that CCC

---

[6] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Hldgs. LLC*, 27 A.3d 531, 536-37 (Del. 2011).

[7] *Vanderbilt Income & Growth Assocs., L.L.C. v. Arvida/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996).  Because the claim may be resolved under Rule 12(b)(6), the Court does not consider the standards under Rules 17(a) or 56.

[8] Although Defendants also sought to dismiss Counts Four and Five of Plaintiffs' complaint, for conversion and injunctive relief respectively, Plaintiffs stated they will withdraw those claims. Pls.' Answer to Defs.' Mot. to Dismiss/Mot. for Summary J. at 13.  Those claims are therefore dismissed.

[9] Compl. ¶ 53.

[10] *Id.* ¶ 54.

assigned the proceeds from the litigation which generated the settlement to The Bancorp Bank ("Bancorp") in January 2012.

Plaintiffs respond by arguing that Defendants' failure to turn over the funds to CCC's receiver in response to an earlier email amounts to unclean hands. They claim that Defendants have taken inconsistent legal positions by retaining the settlement proceeds and arguing that the receiver's interest has extinguished CCC's interest. Plaintiffs' argument is rejected. Defendants explain that they believe themselves to have an attorneys' lien which grants them a claim superior to all other parties asserting a right to the settlement funds. Defendants refused to pay CCC's receiver because they believe their lien is superior to its interest. However, they also argue that CCC has no remaining interest, because the receiver order granted CCC's receiver the rights to the settlement proceeds to the exclusion of CCC (or because Bancorp's interest is superior to CCC's interest). These positions are not inconsistent and do not cause Defendants to have unclean hands.

The receiver order was integrated into Plaintiffs' complaint by their references to the appointment of a receiver and thus this Court may review it when

considering Defendants' motion to dismiss.[11] The receiver order clearly grants CCC's receiver all rights to the settlement proceeds and thereby permits the receiver to stand in CCC's shoes for the purposes of its claim to the settlement funds. The receiver order provides that the receiver shall have possession of the "Property, including the . . . rents and all other property subject to the mortgage and shall have full power and authority to protect, possess, control, manage and operate such property."[12] The "Property" is defined by reference to the Linwood property's mortgage, which includes the "condominium units and all related rights, property and interest" described in an exhibit and within a list of defined assets in the mortgage.[13] These defined assets include "[a]ny and all other rights of Borrower in and to the items set forth" in various subsections, which include the right to conduct legal actions.[14] The receiver order permits the receiver to

---

[11] Plaintiffs discuss the appointment of the receiver and the great financial loss and distress CCC suffered as a result. Compl. ¶ 45. Plaintiffs also explained the circumstances leading to the approval of a receiver for CCC's creditors. *Id.* ¶¶ 16-19. Moreover, the Court is entitled to take judicial notice of "certain facts that are of public record." *See In re Wheelabrator Techs. Inc. S'holders Litig.*, 18 Del. J. Corp. L. 778, 801 (1992) (quoting *Diceon Elecs., Inc. v. Calvary P'rs, L.P.*, 772 F. Supp. 859, 861 (D. Del. 1991)).

[12] *See* Defendants' and Countercl. Pls.' Mot. to Dismiss, or, in the Alternative, Mot. for Summary J. Against Pl. CCC Atlantic, LLC on Counts Three, Four and Five of the Verified Compl. ("DOB") Ex. J at 3, ¶ 3.

[13] DOB, Ex. K §§ 2.01-.02.

[14] *See id.* § 2.02(k) & (m).

"institute, prosecute, defend and/or settle such legal proceedings as the Receiver deems necessary relating to the care, preservation or possession of the Property and to collect any such sums which may be due from any source relating to use of the Property . . . ."[15]  Thus, because the settlement proceeds arose from litigation concerning the maintenance of the condominium units, the receiver order grants CCC's receiver the right to the proceeds as a sum due from any source relating to use of the Property.[16]

CCC therefore has no claim to the funds and no standing to pursue a breach of fiduciary duty claim related to possession or control of those funds.[17]  Count Three of CCC's complaint is therefore dismissed under Court of Chancery Rule 12(b)(6).[18]

---

[15] DOB, Ex. J at 6, ¶ 3(m) (the broad legal authority of CCC's receiver is only limited by an exception, not implicated here, preventing it from directing, participating in, or becoming a party to the foreclosure proceedings with respect to the Property).

[16] The Court therefore need not address the parties' additional standing arguments, for example Defendants' argument that Bancorp's pledge somehow extinguished CCC's claim to the settlement funds.

[17] No party has raised the issue of whether CCC is properly able to institute legal proceedings on its own behalf in light of the receiver order granting the receiver broad rights to control legal proceedings concerning the "Property."  *See* DOB, Ex. J at 6, ¶ 3(m).

[18] CCC has abandoned Counts Four and Five of its complaint, and those counts are also dismissed.  Defendants included summary judgment within their motion and could also have achieved dismissal under that process.  Ultimately, the receiver order, from its plain text,

\* \* \*

An implementing order will be entered.

Very truly yours,

***/s/ John W. Noble***

JWN/cap
cc:   Barry M. Willoughby, Esquire
      Bradley P. Lehman, Esquire
      Register in Chancery-K

---

deprived CCC of any interest in the settlement funds and thus deprived it of standing to assert fiduciary duty claims regarding those funds.