EDWARD T. FEELEY & others *vs.* WILLIAM ANDREWS.

Middlesex. December 12, 1905. — April 2, 1906.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Trespass. Cemetery. Burial. License. Easement. Words,* "Grave."

A dead body after burial becomes part of the ground to which it has been committed and the ordinary remedy for an injury to it is an action of tort in the nature of trespass *quare clausum fregit.*

Tort in the nature of trespass *quare clausum fregit* will not lie against one who enters a close under a license from the owner and after entry commits unlawful acts.

The mere fact that one has the right of burial in a lot in a cemetery "owned and managed by the Roman Catholic Archbishop of Boston" does not show a possessory title enabling him to maintain an action of tort in the nature of trespass *quare clausum fregit* for an unlawful entry.

*Semble,* that one who has a possessory right in a burial lot in a cemetery sufficient to maintain an action of tort in the nature of trespass *quare clausum fregit* for an unlawful entry can maintain an action of tort against the superintendent of the cemetery for negligence in doing the work he is hired to do in preparing a grave for the interment of a dead body, and in such an action may recover damages for injurious treatment of the remains of those already buried in the lot.

One who holds only a license to use real estate for a certain purpose cannot maintain an action of tort in the nature of trespass *quare clausum fregit* for an unlawful entry of the close even while his license is unrevoked.

*Semble,* that one who uses a specific lot of land for the burial of his dead therein for twenty years under an uncontested claim of right gains an easement by prescription in that lot of land.

Whether the purchase of a "grave" designated by letters and numbers in a cemetery "owned and managed by the Roman Catholic Archbishop of Boston" and

its use by the family of the purchaser for burial purposes for more than forty years give the heirs of the purchaser more than a license depends on how the cemetery is conducted and whether what was sold was an easement in a burial lot or only a right to the use of a grave.

TORT by the heirs at law of Peter Feeley against the superintendent of a private cemetery, called the Mount Auburn Catholic Cemetery, owned and managed by the Roman Catholic Archbishop of Boston, a corporation sole, with a first count in the nature of trespass *quare clausum fregit* alleging that the plaintiffs were the owners and proprieters of a certain burial lot in the cemetery, and that the defendant entered the close, dug up the earth, opened the grave, and struck, maltreated and defaced a casket containing the dead body of the plaintiffs' mother and the body itself; and a second count alleging that on or about October 15, 1904, the defendant undertook, for a reward to be paid to him by the plaintiffs, to open this grave and to prepare it for the reception of another casket containing a dead body; that the defendant so negligently and carelessly opened the grave, and so negligently and carelessly prepared it, that he struck, injured and defaced a casket placed therein and the dead body of the plaintiffs' mother. Writ dated December 2, 1904.

At the trial in the Superior Court before *Hitchcock*, J. it appeared that the plaintiffs were the children of Peter Feeley, and employed the defendant, who was the superintendent of the cemetery named in the declaration, to open a grave in that cemetery, which their father had purchased in 1860, and in which his wife, the mother of the plaintiffs, had been buried on August 25, 1898, in order to place therein the casket containing the body of their father, who died on October 15, 1904; and that the acts complained of by the plaintiffs were done by the defendant after opening the grave for that purpose. An instrument containing a designation of the " grave " purchased by Peter Feeley is quoted in the opinion. At the close of the evidence the judge ordered a verdict for the defendant; and the plaintiffs alleged exceptions.

*J. J. Feely & R. Clapp,* for the plaintiffs, submitted a brief.

*F. J. Carney,* for the defendant.

LORING, J. It is laid down in *Meagher* v. *Driscoll*, 99 Mass. 281, that a dead body after burial becomes a part of the ground

to which it has been committed, and that the only action that
can be brought for an injury to it is an action of trespass *quare
clausum fregit.* See also in this connection *Burney* v. *Children's
Hospital,* 169 Mass. 57.

The first count in the case at bar is a count of trespass *quare
clausum fregit.* A verdict for the defendant was ordered rightly
on that count. The plaintiffs, by proving that through the
undertaker they hired the defendant to prepare the grave for
the burial of their father, put themselves out of court on that
count. *Beers* v. *McGinnis, ante,* 279.

And in our opinion the plaintiffs had no right to go to the
jury on the second count.

The cases relied on by them are *Gowen* v. *Bessey,* 94 Maine,
114; *Hollman* v. *Plateville,* 101 Wis. 94; *Smith* v. *Thompson,* 55
Md. 5; *Bessemer Land & Improvement Co.* v. *Jenkins,* 111 Ala. 135.
These are cases where land was set aside for a cemetery, lots were
assigned *in pais* without any deed or written certificate, and ap-
parently the cemetery was not maintained as such beyond the
maintenance of the several lots by those to whom they had
been assigned. In such a case one who had taken and main-
tained possession of a lot by burying his dead therein well might
be held to have a possessory title which would support an action
of trespass *quare clausum fregit.* The statement contained in
the bill of exceptions in the case at bar as to the conduct of the
cemetery here in question is very meagre and far from satis-
factory. However, we have to deal with the case as put by the
plaintiffs in their bill of exceptions. That is the case of a ceme-
tery " owned and managed by the Roman Catholic Archbishop
of Boston," in charge of a superintendent.

In such a case the plaintiffs do not have in our opinion such
a possessory title as enables them to maintain an action of tres-
pass *quare clausum fregit.* The only other ground on which it
can be contended that the plaintiffs made out a title to the land
to which the bodies of their brother or sister (it does not appear
which it was) and of their mother had been committed is that
their father thereby acquired a right therein which on his death
descended to them as his heirs at law.

Ordinarily, the right of the owner of a burial lot in a ceme-
tery is an easement or a right in the nature of an easement

which can be created only by grant under seal. See in this connection *Sohier* v. *Trinity Church*, 109 Mass. 1. And it may be taken to be settled in this Commonwealth that such an owner of a burial lot can maintain trespass *quare clausum fregit*, for unlawfully entering upon the lot. *Meagher* v. *Driscoll*, 99 Mass. 281. *Donnelly* v. *Boston Catholic Cemetery Assoc.* 146 Mass. 163.

If he can maintain trespass *quare clausum fregit* for an unlawful entry, he may maintain an action of tort for negligence committed by the superintendent of the cemetery in doing the work he is hired to do, when he is hired to enter upon the lot and prepare a grave in it for the interment of one who is dead. In such an action the owner of the lot may have the same damages for indecently violating the remains of those buried therein as they have in an action of trespass *quare clausum fregit*.

We assume that one who uses a specific lot of land for the burial therein of his dead for twenty years under a claim of right which is not contested gains by prescription an easement in that lot of land. See in this connection *Hook* v. *Joyce*, 94 Ky. 450.

The difficulty here is that the plaintiffs did not go far enough in their proof to show that such were the facts in the case at bar. All that they showed was that in 1860 " their father purchased the grave in question; . . . that it had been used by their family for burial purposes since the year 1860; that the witness [one of the plaintiffs] had received from his father a certain document relating to the purchase of the grave." This was offered in evidence and is as follows:

" Charlestown, Dec. 10, 1860.

" Mr. Peter Feeley to P. Denvir, Dr.

| | |
|---|---|
| For burying your child & digging grave | 2.25 |
| For one Family grave in Mount Auburn | 6.00 |
| | $8.25 |

" Received payment,

" Patrick Denvir.

" G. 91, R. 12 East."

The difficulty here is that the plaintiffs did not show whether the purchase of " the grave in question " was the purchase of a

license to the use of a grave in a specified lot or was the purchase of the right to use a specified lot of land for burial purposes. If the former, no use, however long continued, would ripen into a right which would support an action of trespass *quare clausum fregit.* In that case, when the plaintiffs' father committed the bodies of. his child and his wife to the earth, they became part of the land of another, and the only person who could maintain an action for interfering with those bodies is the owner of the land of which those bodies became a part. That a licensee even while his license is unrevoked has no such interest in the land as will support an action of trespass *quare clausum fregit,* is settled. The cases are collected in *Walker Ice Co.* v. *American Steel & Wire Co.* 185 Mass. 463, 484, 485.

In the case at bar it was not shown that the grave purchased was a specified lot. It was not shown whether " G. 91, R. 12 East " referred to this grave or to the lot in which a right to a grave was sold to the plaintiffs' father, if it is assumed that it means one or the other. Further, it was not shown how the cemetery in question was conducted ; it was not shown whether what was sold were lots or a right to be buried, that is to say, whether what was sold was an easement to use specific lots in the cemetery or a right to the use of a grave in the cemetery which would be a license.

For these reasons we are of opinion that the ruling was right.

*Exceptions overruled.*