BENJAMIN W. TREFRY *vs.* ARIEL O. YOUNGER & another.

Essex.    November 9, 1916. — January 20, 1917.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Cemetery. Deed. Burial. Dedication. Execution. Notice. Evidence,* Presumptions and burden of proof.

Where the owner of a tract of land situated on the outskirts of a town near a town cemetery has laid out a burial lot upon the land for the use of his family and also has sold numerous burial lots to others at one end of the tract, and afterwards gives a quitclaim deed conveying "all my interest in the unsold lots the land in M, aforesaid, locally known as the Harbor View Cemetery," followed by a description by boundaries of the entire tract of land, these facts, including the language of the deed, are sufficient to prove a dedication of the tract of land as a burial ground, and the quitclaim deed conveys the whole tract subject to the rights of the owners of burial lots to whom deeds or certificates have been given.

The interest in the land acquired by the deed above described is subject to be taken and sold on execution.

In a deed given by a deputy sheriff at such an execution sale a description of the tract of land as being "locally known as Harbor View Cemetery" is constructive notice to the grantee, who was the purchaser at such execution sale, that

the tract of land is a cemetery for the burial of the dead and is subject to all the rights incidental to such property.

A deed or certificate of a burial lot in a cemetery, although made to the grantee "and his heirs forever," grants no interest in the land but is in the nature of a license irrevocable so long as the place continues to be used as a burial ground.

Such a deed or certificate need not be recorded in order that the rights conferred by it may be enjoyed by its holder as against a holder of unsold lots.

The owner of a tract of land dedicated to use as a cemetery can maintain a suit in equity against one, who has purchased a lot in the cemetery and holds a deed conveying to him "and his heirs forever" the lot by number "in Harbor View Cemetery, in said M, to be used for the purposes of burial," to enjoin him from removing soil, gravel or other material from the lot except so far as such removal is necessary for the purposes of burial or is required in order properly to grade and improve the lot.

In such a suit the mere absence of evidence of permission of the town to use the land for the purpose of burial as required by R. L. c. 78, § 30, does not raise a presumption that the land was not used legally for the purpose of burial, especially where no such defence was set up in the answer and no such contention was made at the hearing before the master.

BILL IN EQUITY, filed in the Superior Court on June 16, 1915, by the owner of the unsold lots in the Harbor View Cemetery at Marblehead to enjoin Ariel O. Younger and Henry L. Martin from committing trespasses on these lots and removing sods, soil and gravel therefrom.

The case was referred to a master "to hear the case on its merits." The master filed his report, in which he found the facts that are stated in the opinion. Later the case was heard by *Raymond*, J., on a motion to confirm the master's report and to enter a decree in accordance with the findings therein. The judge made an order confirming the master's report, and thereafter by his order a final decree was entered in which it was "found and decreed that the certificates signed by the defendant Henry L. Martin, dated June 27, 1913, October 24, 1913, and December 26, 1913, purporting to be evidence of sales of certain lots in Harbor View Cemetery in said Marblehead, to the defendant Ariel O. Younger, and upon which the defendant Younger depends for his alleged title to said lots, did not convey title thereto to said Younger but each and all of said lots were and are included in 'the premises being the unsold lots in what is locally known as Harbor View Cemetery' and passed to the plaintiff under the deed of Eben T. Brackett, deputy sheriff, dated November 7, 1914."

It was "further ordered and decreed that the defendants, their servants and agents be forever enjoined from entering the premises

described in the plaintiff's bill and from removing sods, soil or gravel therefrom, particularly from the lots above referred to, to wit, lots numbered 140 to 143 inclusive, 145 to 163 inclusive, 185 to 200 inclusive, and the parcel described as 345 single graves."

The defendant appealed.

R. L. c. 78, § 30, is as follows: "Except in the case of the erection or use of a tomb on private land for the exclusive use of the family of the owner, no land, other than that already so used or appropriated, shall be used for the purpose of burial, unless by permission of the town or of the mayor and aldermen of the city in which the same lies. For every interment in violation of the provisions of this section in a city or town in which the notice prescribed in the following section has been given, the owner of the land so used shall forfeit not less than twenty nor more than one hundred dollars."

*C. M. Crowell*, for the defendant.

*A. P. White*, for the plaintiff, submitted a brief.

CROSBY, J. This is a bill in equity brought to restrain the defendants from entering upon certain real estate alleged to be owned by the plaintiff, and removing therefrom soil, gravel and other materials. The case was referred to a master who has found certain facts, and a decree has been entered in favor of the plaintiff substantially as prayed for in the bill.

For a considerable period of time before April 12, 1913, (how long does not appear in the record,) one Hawkes was the owner of a tract of land consisting of several acres, situated in Marblehead on the outskirts of the town and near a town cemetery. He laid out a burial lot upon the land for the use of his family and also sold numerous burial lots to others upon the northerly end of the tract. The master states that it did not appear what instruments of title were given to the purchasers, or whether any of them was recorded in the registry of deeds. There was evidence that Hawkes had kept a book in which he had made a record of the lots sold, but that this book had been lost. On April 12, 1913, Hawkes conveyed by quitclaim deed to the defendant Martin "all my interest in the unsold lots the land in Marblehead, aforesaid, locally known as Harbor View Cemetery;" then follows a recital of the adjoining owners. This deed was acknowledged and was duly recorded in the registry of deeds.

Later in the same year, Martin conveyed to the defendant Younger by three several instruments which are all substantially in the same form, certain lots in the cemetery tract. These conveyances are under seal and in the form of a grant; they convey by number the lots "in Harbor View Cemetery, in said Marblehead, to be used for the purposes of burial," and run to the grantee "and his heirs forever;" they have not been recorded in the registry of deeds.

Afterwards a judgment was obtained against Martin by one Hollis, and upon an execution sale the land was bid off by the plaintiff, who received from the deputy sheriff who made the sale a deed dated November 7, 1914, which was duly recorded. It contains substantially the same description of the land sold and conveyed as appears in the deed from Hawkes to Martin.

We are of opinion that the interest of Martin in the land was subject to sale on execution, and that the plaintiff took thereunder all the land owned by Martin, subject to the rights of those who previously had purchased burial lots.

The contention of the defendants, that the deed from Hawkes to Martin conveyed no title to the fee in the land constituting the cemetery, is not tenable. We are of opinion that the deed of "all my interest in the unsold lots" followed by the recital "Said premises are bounded: Northeasterly and northwesterly by land formerly of Looney; southeasterly by land now or formerly of Wyman; and southwesterly by Cemetery Road and land now or formerly of Looney, or however said premises may be bounded," conveyed the whole tract, subject to the rights of owners of lots to whom deeds had been given for burial purposes. The land comprising the cemetery could lawfully be sold or mortgaged. *Garden Cemetery Corp.* v. *Baker,* 218 Mass. 339, 342, 343. *Sweetser* v. *Manning,* 200 Mass. 378. *Donnelly* v. *Boston Catholic Cemetery Association,* 146 Mass. 163, 166.

The master finds that the northerly part of the land "is well laid out in burial lots, well graded and covered with well wrought monuments and stones."

These findings, and the findings that Hawkes had laid out a burial lot for the use of his family and had made numerous sales of burial lots to others, together with the language in the deed from Hawkes to Martin, are amply sufficient to prove a dedication

to public use of the land as a burial ground. *Commonwealth* v. *Viall*, 2 Allen, 512. *Davidson* v. *Reed*, 111 Ill. 167.

The deed from Hawkes to Martin and the deed from the deputy sheriff to the plaintiff, in each of which the land is described as "locally known as Harbor View Cemetery," were constructive notice to the plaintiff that it was a cemetery for the burial of the dead and was subject to all the rights incidental to such property.

The rights of owners in burial lots in cemeteries are well established; these rights ordinarily are in the nature of an easement; they do not convey an absolute right of property, but give the right of burial so long as the place continues to be used as a burial ground. It is a limited use for purposes of interment which gives no title to the land. A grant of a lot in a cemetery is said to be analogous to a grant of a pew in a church. *Sohier* v. *Trinity Church*, 109 Mass. 1. *Feeley* v. *Andrews*, 191 Mass. 313. *Massachusetts Baptist Missionary Society* v. *Bowdoin Square Baptist Society*, 212 Mass. 198. *Garden Cemetery Corp.* v. *Baker*, 218 Mass. 339. A certificate or deed to purchasers of lots in a cemetery conveys the privilege to make interments in the lots; it is not a grant of any interest in the soil, but is in the nature of an easement or irrevocable license so long as the place continues as a burial ground. *Page* v. *Symonds*, 63 N. H. 17. *Windt* v. *German Reformed Church*, 4 Sandf. Ch. 471. *Dwenger* v. *Geary*, 113 Ind. 106. *Kincaid's Appeal*, 66 Penn. St. 411. *Catholic Cathedral Church of Baltimore* v. *Manning*, 72 Md. 116.

The master found that the three deeds or certificates were severally issued to the defendant Younger for a valuable consideration upon the dates therein written. They conveyed to him an easement or right of burial in the lots with all the privileges incident to such a conveyance. The plaintiff took no greater title under the deed to him than Martin, the judgment debtor, had at the time of the levy and sale.

It is not necessary that the deeds or certificates to Younger should be recorded as against the plaintiff or any other holder of the unsold lots. *Feeley* v. *Andrews*, 191 Mass. 313, 315. *Davidson* v. *Reed*, 111 Ill. 167, 169. *Conger* v. *Treadway*, 50 Hun, 451.

We cannot presume that the land was not used legally for the purposes of burial in the absence of evidence of permission by the town so to use it in accordance with the R. L. c. 78, § 30. No such

defence is set up in the answer, nor was that contention made at the hearing before the master. *Meagher* v. *Driscoll,* 99 Mass. 281, 284.

Upon the findings of the master, the plaintiff took title to the real estate subject to the rights of lot owners including the rights of Younger. Younger, as the owner of the lots conveyed to him, was entitled to reasonable access thereto, and could grade and improve his lots and could remove material therefrom if reasonably necessary and proper for that purpose, but not otherwise.

For the reasons stated, we are of opinion that the decree must be reversed, and a decree entered enjoining the defendants from removing soil, gravel or other material from the lots owned by Younger unless such removal is reasonably necessary for purposes of burial or required in order properly to grade and improve them.

*So ordered.*