AMERICAN GLUE & RESIN,
INC., Plaintiff,

v.

AIR PRODUCTS & CHEMICALS, INC.;
Matlack, Inc.; and Union Oil Company
of California, Defendants.

Civ. A. No. 92–10555–GN.

United States District Court,
D. Massachusetts.

Oct. 14, 1993.

Robert E. Daidone, Law Offices, Boston, MA, for plaintiff.

Rosemary M. Allen, Mintz Levin Cohn Ferris Glovsky & Popeo, P.C., Boston, MA, for defendants.

Deming E. Sherman, Matthew T. Oliverio, Edward & Angell, Providence, RI, for Union Oil of California.

GORTON, District Judge.

Report and Recommendation accepted and adopted.

## REPORT AND RECOMMENDATION RE: DEFENDANT AIR PRODUCTS & CHEMICALS, INC.'S MOTION TO DISMISS (DOCKET ENTRY # 3); MOTION TO DISMISS (DOCKET ENTRY # 5)

August 31, 1993

BOWLER, United States Magistrate Judge.

On March 31, 1993, defendant Air Products & Chemicals, Inc. ("Air Products") filed a motion to dismiss (Docket Entry # 3) as did defendant Union Oil Company of California ("Union") (Docket Entry # 5). Plaintiff American Glue & Resin, Inc. ("American") opposes the motions.[1] (Docket Entry ## 9 & 10).

On July 13, 1993, this court held a hearing and took the motions to dismiss (Docket Entry ## 3 & 5) under advisement.

### BACKGROUND

American originally filed this action in Massachusetts Superior Court on December 27, 1991. On March 9, 1992, Air Products filed a notice of removal in the United States District Court, District of Massachusetts, based on diversity jurisdiction. (Docket Entry # 1).

American alleges that defendants Air Products, Union and Matlack, Inc. ("defendants") are responsible for environmental contamination in the area of American's plant in Middleton, Massachusetts. (Docket Entry # 1, ¶ 6). American further claims that certain spillage of chemicals took place and that defendants, two suppliers of chemicals and a transporter of chemicals, are responsible for the resulting damages suffered by American. (Docket Entry # 1, ¶ 7). American brings the following six counts for relief against defendants: (1) breach of contract (Count I); (2) declaratory judgment (Count II); (3) ac-

cessory liability under Massachusetts General Laws chapter 21E ("chapter 21E") (Count III); (4) joint and several strict liability of defendants for violating chapter 21E (Count IV); (5) negligence (Count V); (6) trespass (Count VI); (7) nuisance (Count VII); and (8) injunctive relief (Count VIII). (Docket Entry # 2).

Air Products and Union seek dismissal on the grounds that counts I, III, IV and V are barred by the applicable statute of limitations. Air Products additionally submits that counts III and IV are subject to dismissal because American fails to state a claim for relief under section 4 of chapter 21E and American's claim under section 5 of chapter 21E is time barred. Air Products and Union further argue that Count VI for trespass and Count VII for nuisance fail to state a claim for relief. Finally, Air Products and Union seek dismissal of counts II and VIII for declaratory and injunctive relief inasmuch as these counts are derivative in nature. (Docket Entry ## 4, 6 & 12).

American disagrees with Air Products' and Union's assertions concerning what statute of limitations to apply to counts I, III, IV and V. American also disputes the triggering date with respect to whatever statute is applied and asserts that counts VI and VII are viable as plead. (Docket Entry ## 11 & 13).

Inasmuch as Air Products and Union seek dismissal under Rule 12(b)(6), Fed.R.Civ.P., this court shall draw all reasonable inferences in favor of American, the nonmoving party, and accept as true the factual allegations contained in the complaint. Dismissal is proper if it appears beyond doubt that American can prove no set of facts entitling it to relief. *Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir.1989); *Lessler v. Little*, 857 F.2d 866, 867 (1st Cir.1988), *cert. denied*, 489 U.S. 1016, 109 S.Ct. 1130, 103 L.Ed.2d 192 (1989); *Framingham Union Hospital, Inc. v. Travelers Insurance Company*, 721 F.Supp. 1478, 1481–1482 (D.Mass. 1989); *see also Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 53 (1st Cir.1990)

---

1. The motions to dismiss were referred to this court for issuance of a report and recommenda-

tion on June 7, 1993.

(legal conclusions not entitled to presumption of truthfulness). Consideration of documents not attached to the complaint or incorporated therein is improper under a Rule 12(b)(6) motion. *Cooperativa de Ahorro Y Credito Aguada v. Kidder, Peabody & Company,* 993 F.2d 269, 272 (1st Cir.1993).

As alleged in the complaint, this court finds the following facts as true for purposes of the motions to dismiss. American is a Massachusetts corporation engaged in the business of manufacturing and selling adhesives. Its principal place of business and the location of its plant are in Middleton, Massachusetts. (Docket Entry # 2).

Air Products, a supplier of chemicals, is a corporation located in Allentown, Pennsylvania and licensed to do business in the Commonwealth of Massachusetts. Union, also a supplier of chemicals, is a corporation located in Los Angeles, California and licensed to do business in the Commonwealth of Massachusetts. Matlack, a transporter of chemicals for Air Products, is a corporation located in Lansdowne, Pennsylvania and licensed to do business in the Commonwealth of Massachusetts. (Docket Entry # 2).

On December 29, 1986, American received a notice of its violation of chapter 21E from the Massachusetts Department of Environmental Quality Engineering ("DEQE"). The DEQE investigated the environmental damage and concluded that American "had committed one or more acts which resulted in environmental damage" or that American was otherwise responsible for the environmental damage in the area of its Middleton plant. (Docket Entry # 2).

In 1989 Sandra Pollack ("Pollack"), an adjacent property owner, filed a lawsuit in Massachusetts Superior Court against American based on chemical spillage resulting in a judgment against American in the amount of $193,000 ("Pollack litigation"). During the period of time in which defendants sold, delivered and stored chemicals at or around American's plant, chemicals were spilled or released as alleged in the DEQE report and in the Pollack litigation. As a result of this spillage of chemicals, the groundwater feeding Pollack's well became contaminated to-

gether with the land and the water supply of American. (Docket Entry # 2).

## DISCUSSION

Employing the above mentioned standard with respect to review of the motions to dismiss, this court turns to the respective counts.

### I. *Count I; Breach of Contract*

Under Count I American asserts that "[d]efendants materially breached their contracts with [American] for the sale, delivery, and storage of chemicals, by causing a spillage of chemicals, as alleged by the DEQE, and in the Sandra Pollack litigation." (Docket Entry # 2, ¶ 10). American refers to each defendant collectively as "defendants" and fails to identify the specific contract(s) allegedly breached. Air Products and Union therefore argue that Count I fails to plead specific facts entitling American to relief in violation of Rule 12(b)(6), Fed.R.Civ.P.

In reply, American argues that this court can take judicial notice of matters of public record and, in particular, the Pollack litigation. Consequently, Air Products and Union were adequately apprised of American's breach of contract claim. American also points out that the Federal Rules of Civil Procedure provide for liberal notice pleading.

Air Products and Union additionally maintain that Count I is time barred under the four year statute of limitations applicable to transactions in goods under the Uniform Commercial Code, Massachusetts General Laws chapter 106, section 2–725 ("section 2–725"). Inasmuch as American had notice of the breach at the time it received the DEQE notice in December 1986 but waited nearly five years to file suit, American's breach of contract claim under Count I is time barred even employing a "discovery rule," according to Air Products and Union. (Docket Entry ## 4, 6 & 12).

In reply, American submits that the breaches of contracts occurred at the time of chemical spillage and that such breaches occurred anytime during the period Air Prod-

ucts entered into the contracts [2] until the time period Air Products completed delivery of the chemicals in 1988 and 1989.[3] Accordingly, applying the four year statute of limitations in section 2–725, American argues that its claim under Count I is not time barred. Alternatively, American argues that Air Products entered into service contracts with defendant Matlack, Inc. ("Matlack") with American as the third party beneficiary. Hence, the six year statute of limitations applicable to contracts outside the reach of the Uniform Commercial Code would apply, i.e., Massachusetts General Laws chapter 260, section 2. (Docket Entry # 11).

Turning first to the sufficiency of the allegations contained in the complaint, Rule 8(a), Fed.R.Civ.P., requires the pleader to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Under this standard the plaintiff "need only state a set of facts giving rise to the claim ... sufficient to place defendant on notice as to the type of claim alleged and the grounds upon which it rests." *Reed Paper Company v. Proctor & Gamble Distributing Company*, 807 F.Supp. 840, 849 (D.Me.1992). Although the plaintiff need not plead a specific legal theory, *see Fitzgerald v. Codex Corporation*, 882 F.2d 586, 589 (1st Cir.1989), the "minimal requirements are not tantamount to nonexistent requirements." *Gooley v. Mobil Oil Corporation*, 851 F.2d 513, 514 (1st Cir.1988) ("*Gooley II*").[4] Notice pleading under Rule 8 therefore requires a pleader "to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley II*, 851 F.2d at 515; *see generally Boston & Maine Corporation v. Town of Hampton*, 987 F.2d 855, 863–865 (1st Cir.1993).

■ In assessing the complaint under this liberal standard, American urges this court to take judicial notice of the Pollack litigation. While it is undoubtedly true that this court may take judicial notice of records in related state court proceedings on a Rule 12(b)(6) motion, *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir.), *cert. denied*, 449 U.S. 996, 101 S.Ct. 535, 66 L.Ed.2d 294 (1980), American fails to attach a certified copy of the state court records to its opposition (Docket Entry # 11). As aptly stated by one court, "On a motion to dismiss the Court is free to take judicial notice of certain facts that are of public record *if* they are provided to the court by the party seeking to have them considered." *Diceon Electronics, Inc. v. Calvary Partners, L.P.*, 772 F.Supp. 859, 861 (D.Del.1991) (emphasis added); *accord Concordia v. Bendekovic*, 693 F.2d 1073, 1076 (11th Cir.1982) (court will not take judicial notice of records in another case unless prior proceedings are introduced into evidence); Fed.R.Evid. 201(b) & (d). The general rule is that "the Court 'will not travel outside the record of the case before it in order to take notice of the proceedings in another case, even between the same parties

---

**2.** In its supporting brief, American represents that Air Products entered into the contracts with American before 1986. *See Cooperativa de Ahorro Y Credito Aguada v. Kidder, Peabody & Company*, 993 F.2d at 272.

**3.** American fails to identify in its complaint the time period in which Air Products or any other defendant completed delivery of the chemicals. Rather, American makes this allegation in its supporting memorandum. (Docket Entry # 11). Union correctly maintains that this court is confined to review the four corners of the complaint on a motion to dismiss.

**4.** In *Gooley II*, the First Circuit affirmed the lower court's dismissal under Rule 12(b)(6), Fed. R.Civ.P., of a three count complaint alleging, *inter alia*, breach of contract. As summarized by the lower court, *Gooley v. Mobil Oil Corporation*, 678 F.Supp. 939 (D.Mass.1987), *aff'd*, 851 F.2d 513 (1st Cir.1988) ("*Gooley I*"), Gooley pleaded

that Mobil had accepted the terms of an offer agreement for certain property which "included a provision that prior to closing Mobil would test underground storage tanks and piping for leakage and, if necessary, remove leaking tanks." *Gooley I*, 678 F.Supp. at 940. In his breach of contract count, Gooley argued "that Mobil's contractual obligation to test for and remove leaking storage tanks implied an obligation to clean the property of all contaminants" before the closing. The court in *Gooley I*, however, found that the language of the offer agreement did not contain an implied obligation for Mobil to clean the property of contaminants and that Gooley waived his contractual rights. Accordingly, the court dismissed Gooley's breach of contract claim. *Gooley I*, 678 F.Supp. at 940–942. In the case at bar, the contract(s) are neither attached as an exhibit nor incorporated by reference into the complaint.

and in the same court, unless the proceedings are put in evidence.'" *Wilson v. Volkswagen of America, Inc.*, 561 F.2d 494, 510 & n. 38 (4th Cir.1977), *cert. denied*, 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 768 (1978) (collecting cases). Inasmuch as American fails to attach any documents related to the Pollack litigation, this court will not take judicial notice of the litigation in the course of evaluating the sufficiency of the complaint.

■ Accordingly, examining the complaint, the issue is whether American alleges adequate facts, directly or by reasonable inference, concerning the material elements of a breach of contract sufficient to put Air Products and Union on notice of its claim. The complaint asserts that "defendants" breached a number of unidentified contracts for the sale, delivery and storage of certain chemicals. Specifically, American states that, "[d]efendants materially breached their contracts with [American] for the sale, delivery, and storage of chemicals, by causing a spillage of chemicals, as alleged by the DEQE, and in the Sandra Pollack litigation." (Docket Entry # 2, ¶ 10). American further alleges that it was "severely damaged." (Docket Entry # 2, ¶ 11). Taking these statements as true, they adequately allege the existence of contracts between American and Air Products and/or Union, identify the subject matter of the contracts (sale, delivery and storage of chemicals), specify the nature of the breach (spillage of chemicals), and state that "[American] was severely damaged." (Docket Entry # 2, ¶¶ 10 & 11). While American's complaint is indeed short on facts, it is not devoid of factual allegations sufficient to put Air Products and Union on notice of American's claim thereby permitting them to draft a responsive pleading. *See, e.g., Cleland v. Stadt*, 670 F.Supp. 814, 816 (N.D.Ill.1987) (terse complaint adequately alleged elements of unjust enrichment); *Asphaltic Enterprises, Inc. v. Baldwin–Lima–Hamilton Corpo-*

*ration*, 39 F.R.D. 574, 576 (E.D.Pa.1966) (complaint asserted existence of contract containing express warranty, that the plaintiff had fulfilled its obligations, and that the defendant breached the warranty, was not subject to Rule 12(b)(6) dismissal); *see generally Trevino v. Union Pacific Railroad Company*, 916 F.2d 1230, 1234 (7th Cir.1990) (noting that complaint would satisfy Rule 8 by alleging that the plaintiff was passenger in car at railroad crossing, car collided with train operated by the defendant, and collision resulted from the defendant's negligence; further recognizing that the plaintiff can plead himself out of court by unnecessarily alleging additional facts).

The more problematic issue concerns the statute of limitations. The face of the complaint alleges the existence of contracts for the sale, delivery and storage of chemicals. It also identifies Air Products and Union as suppliers of chemicals. The complaint further states that the spillage of chemicals is synonymous with allegations alleged by the DEQE and in the Pollack litigation. The DEQE notified American of its violation of chapter 21E on or about December 29, 1986. The Pollack litigation, however, commenced in 1989. Drawing reasonable inferences in American's favor, the complaint infers that the delivery of chemicals referred to in the DEQE's allegations occurred no later than December 29, 1986, and that the delivery of chemicals concerning the Pollack litigation occurred no later than 1989.

■ The parties dispute whether to apply a four year statute of limitations contained in the Uniform Commercial Code ("the Code"), section 2–725,[5] or whether to apply the six year statute of limitations contained in Massachusetts General Laws chapter 260, section 2 ("section 2"). The Code governs transactions in goods as opposed to services.[6] *See White v. Peabody Construction Co., Inc.*, 386 Mass. 121, 434 N.E.2d 1015 (1982). Where a

---

**5.** The Code also contains a separate statute of limitations, Massachusetts General Laws chapter 106, section 2–318 ("section 2–318"), applicable to claims which are in essence product liability claims. Section 2–318 is not "designed as an alternative to contractually based warranty claims." *Wilson v. Hammer Holdings, Inc.*, 850 F.2d 3, 7–8 (1st Cir.1988).

**6.** The UCC defines "goods" as:

   ... all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale....

   Mass.Gen.L. ch. 106, § 2–105.

contract mixes both goods and services, the Code nevertheless applies, provided the predominant factor, thrust, or purpose of the contract is to supply goods with labor incidentally involved. *See Cianbro Corporation v. Curran–Lavoie, Inc.,* 814 F.2d 7, 13–14 (1st Cir.1987) (collecting cases); *USM Corporation v. Arthur D. Little Systems, Inc.,* 28 Mass.App.Ct. 108, 546 N.E.2d 888, 894 (1989), *review denied,* 406 Mass. 1104, 550 N.E.2d 396 (1990) (UCC applies to mixed contract where goods constituted significant part with services incidental); *see, e.g., In re Cole & Sons Trucking Services, Inc. v. Springfield Mack Truck, Inc.,* 109 B.R. 538, 540 (D.Mass.1990) (reconditioned engine in truck). As stated in the complaint, Air Products and Union are suppliers of chemicals and the contracts involve the sale, delivery and storage of chemicals. The Code and the four year statute of limitations contained therein, section 2–725, therefore govern the contracts at issue.

■ Section 2–725 unequivocally states that "[a] cause of action accrues when the breach occurs regardless of the aggrieved party's lack of knowledge. A breach of warranty occurs when tender of delivery is made." Mass.Gen.L. ch. 106, § 2–725(2); [7] *see United California Bank v. Eastern Mountain Sports, Inc.,* 546 F.Supp. 945, 964 & 965 (D.Mass.1982), *aff'd,* 705 F.2d 439 (1st Cir.1983) (under Massachusetts law, cause of action for sales contract accrues when delivery is made regardless of buyer's knowledge of breach); *see also Electric Power Board of Chattanooga v. Monsanto Company,* 879 F.2d 1368, 1376 (6th Cir.1989), *cert. denied,* 493 U.S. 1022, 110 S.Ct. 724, 107 L.Ed.2d 743 (1990) (applying section 2–725 under Tennessee law to find limitations period began at time equipment was sold under breach of warranty claim). Notwithstanding the express language of section 2–725, American seeks to apply a "discovery rule" to its contract claim. Inasmuch as it is reasonable to infer that American neither could nor should have known of the environmental damage at the time of tender of delivery, *see Cambridge Plating Company, Inc. v. Napco, Inc.,* 991 F.2d 21, 26–28 & n. 6 (1st Cir.1993) (discussing discovery rule and term "inherently unknowable"), this court will assume, solely for purposes of argument in light of the express and explicit language of section 2–725, that the discovery rule applies to section 2–725. *Cf. Wilson v. Hammer Holdings, Inc.,* 850 F.2d 3, 5 (1st Cir.1988) (static nature of authenticity of painting argued against applying discovery rule).

Under this rule, as applied in Massachusetts, " 'a cause of action does not accrue until the plaintiffs know or reasonably should have known that they were injured as a result of the defendant's conduct.' " *Cornell v. E.I. Dupont De Nemours & Company,* 841 F.2d 23, 24 (1st Cir.1988); *accord Cambridge Plating Company, Inc. v. Napco, Inc.,* 991 F.2d at 27.[8] Knowledge of the extent of the injury does not determine the triggering date. *See Olsen v. Bell Telephone Laboratories, Inc.,* 388 Mass. 171, 445 N.E.2d 609, 612 (1983). Nor does knowledge that the defendant breached a legal duty owing to the plaintiff trigger the limitations period. *See Fidler v. Eastman Kodak Company,* 714 F.2d 192, 198–199 (1st Cir.1983). Rather, the level of notice required to trigger the running of the limitations period is when the plaintiff knows or reasonably should know the "likely cause" of his injuries. *Id.* at 24; *accord Cambridge Plating Company, Inc. v. Napco, Inc.,* 991 F.2d at 29 (quoting *Fidler* ).

Under either a discovery rule or the tender of delivery rule expressly embodied in 2–725, American's contract claim survives Air

---

**7.** The statute also contains an exception applicable to contracts containing an explicit warranty or promise of future performance. Mass.Gen.L. ch. 106, § 2–725(2); *see Wilson v. Hammer Holdings, Inc.,* 850 F.2d 3, 5–6 (1st Cir.1988).

**8.** In *Cambridge,* the First Circuit, quoting *Bowen v. Eli Lilly & Company,* 408 Mass. 204, 557 N.E.2d 739 (1990), approved the following definition of the discovery rule:

This rule prescribes as crucial the date when a plaintiff discovers, or any earlier date when she should reasonably have discovered, that she has been harmed or may have been harmed by the defendant's conduct.... [T]he statute of limitations starts to run when an event or events have occurred that were reasonably likely to put the plaintiff on notice that someone may have caused her injury.

*Cambridge Plating Company, Inc. v. Napco, Inc.,* 991 F.2d at 27.

Product's and Union's motions to dismiss. As noted above, the complaint, when viewed in American's favor, reasonably infers that the delivery of chemicals referred to in the Pollack litigation occurred no later than 1989. Similarly, it is reasonable to infer that American reasonably should or could have known of the likely cause of the chemical spillage as alleged in the Pollack litigation no later than 1989. As such, the complaint is timely inasmuch as the limitations period began to run no later than 1989 resulting in a time bar no later than 1992.

With respect to the chemical spillage alleged by the DEQE, the complaint reasonably infers that the delivery of chemicals concerning the DEQE's allegations occurred no later than December 29, 1986. Similarly, the DEQE notice placed American on reasonable notice of environmental injury to its property and the likely cause, chemical spillage. It is also reasonable to infer that American should have connected the sale and delivery of chemicals by Air Products and/or Union to the chemical spillage. Accordingly, under either a discovery rule or the tender of delivery rule, American's contract claims for chemicals related to and noticed by the DEQE in December 26, 1986, are time barred as of December 26, 1990.

Unfortunately, the contract claim makes no distinction between the liability of Air Products and Union for chemical spillage alleged in the DEQE notice versus that alleged in the Pollack litigation. While such spills may be one in the same, it is not the province of this court to guess or hypothesize on a motion to dismiss. Air Products and Union have the burden as the moving parties. The complaint may reasonably be read to infer that deliveries of chemicals occurred after the DEQE notice and resulted in injuries as reflected in the Pollack litigation in 1989. Accordingly, Count I may remain in this action at this time.[9]

In light of the above resolution, this court need not address American's argument that it is a third party beneficiary of any contract between Matlack and Air Products and that such a contract involves the rendering of services outside the reach of the Code and section 2–725. Moreover, the complaint makes no mention of a contract between Matlack and Air Products nor does the complaint identify or allude to American as a third party beneficiary of any such contract.

## II. *Counts III & IV; Chapter 21E*

Chapter 21E creates a private cause of action for persons liable for response costs undertaken by any person. Massachusetts General Laws chapter 21E, section 4 ("section 4").[10] Chapter 21E additionally permits any person to recover damages resulting from the release or threat of release of hazardous material from "any person" who caused or is legally responsible for the release or threat of release of the hazardous material. Massachusetts General Laws chapter 21E, section 5(a)(iii) ("section 5(a)").

Count III of American's complaint seeks an assessment of the environmental obligations of "each" defendant, i.e., Air Products and/or Union. Read in a favorable light, Count III is properly characterized as brought under section 4. Count IV of American's complaint alleges that "[d]efendants," i.e., Air Products and/or Union, "are responsible for the release of hazardous materials alleged in the Sandra Pollack litigation, and by the DEQE." American therefore seeks judgment against "[d]efendants" jointly and severally for damages caused to American due to violations of chapter 21E. Read in a

---

9. Thus, while summary judgment motions and supporting materials may evidence that the deliveries occurred no later than December 29, 1986, this court is not faced with a summary judgment motion. This court nevertheless has doubts about the timeliness of American's action and accordingly encourages the parties to marshal the material facts concerning the statute of limitations, as outlined by this court, and brief the issue prior to embarking on a long and complicated discovery schedule. Inasmuch as this court has no control over the discovery schedule in this case, however, this court cannot and will not order the parties to brief the limitations issues, with additional supporting facts, on summary judgment or set an abbreviated discovery schedule confined to the limitations issues.

10. Section 4 is effective for actions commenced or arising prior to the effective date of section 4A, July 1, 1992.

favorable light, Count IV is properly characterized as brought under section 5(a).

Air Products and Union put forth two arguments in favor of dismissing American's chapter 21E counts. First, Air Products and Union argue that American lacks standing under section 4 inasmuch as American has not yet undertaken or incurred assessment, containment or removal costs within the meaning of section 4. American's action under Count III is therefore premature. (Docket Entry ## 4, 6 & 12). American maintains its action is timely inasmuch as the complaint infers that American has undertaken assessment costs. American also points out that it seeks declaratory relief of the parties' respective obligations under section 4. (Docket Entry # 11).

Second, Air Products and Union maintain that the three year statute of limitations applicable to torts and contained in Massachusetts General Laws chapter 260, section 2A ("section 2A"), applies to American's section 5 claim. (Docket Entry ## 4, 6 & 12). American contends that the five year statute of limitations applicable to actions brought by "the attorney general"[11] under chapter 21E applies to American's private right of action under section 5. (Docket Entry # 11). In support of this argument, American cites this court to an unpublished decision of the Massachusetts Superior Court. (Docket Entry # 13).

■ Turning to the first argument, what statute of limitations to apply necessarily involves determining the nature of the obligations assumed by the parties under chapter 21E. *See generally Ocasio–Juarbe v. Eastern Airlines, Inc.*, 902 F.2d 117, 118 (1st Cir.1990) (examining nature of obligations under the facts to determine whether to apply tort or contract based statute of limitations). The pertinent language of section 4, as it read prior to the 1992 amendment, is as follows:

Any person who undertakes assessment, containment or removal action regarding the release or threat of release of oil or

hazardous material shall be entitled to reimbursement from any other person liable for such release or threat of release for the reasonable costs of such assessment, containment and removal.

Mass.Gen.L. ch. 21E, § 4. Chapter 21E defines "assessment" broadly to include "investigations, monitoring, surveys, testing, and other information gathering activities to identify: (1) the existence, source, nature and extent of a release or threat of release of oil or hazardous materials." Mass.Gen.L. ch. 21E, § 2.

As explained by the Massachusetts Supreme Judicial Court ("SJC"), an action under section 4 is an action for reimbursement. *Oliveira v. Pereira*, 414 Mass. 66, 605 N.E.2d 287, 290 & 291 (1992) (approving lower court's application of three year tort limitations period in section 2A to section 4 claim). As further reiterated in *Oliveira*, section 4 "presupposes liability" and "simply allows for reimbursement of expenditures made." *Id.* 605 N.E.2d at 290. Referring to the court's previous definition of " 'reimbursement' as 'repaying or making good the amount paid out,' " the SJC in *Oliveira* held that a section 4 claim accrues on the date(s) assessment costs are paid. *Id.* at 291. In a footnote, the court further noted that "because the action is one for reimbursement, it is possible to have more than one cause of action and more than one accrual date." *Id.* at p. 291 & n. 11. In sum, the language of section 4 expressly requires the plaintiff to undertake an assessment and the nature of an action under section 4 is one for reimbursement of the costs of such an assessment. To the extent American expended monies for assessment costs, American has standing under section 4 to bring a claim for reimbursement to recover such costs.

This construction of section 4 coincides with reasoning employed in an unpublished decision issued by the Massachusetts Superior Court and cited by Air Products and Union, *Nestor v. Haley & Aldrich, Inc.*, C.A. No. 90–3618 (Mass.App.Ct. March 12, 1991).[12]

---

**11.** Massachusetts General Laws chapter 21E, section 11 ("section 11").

**12.** "Unpublished decisions have no precedential value in this circuit and may not be cited by the Court except in related cases." *McKenney v. Sullivan*, 743 F.Supp. 53, 58 (D.Me.1990) (citing

(Docket Entry # 4, Ex. B). In *Nestor*, the court, in dicta, stated that no action under section 4 "exists unless and until someone undertakes assessment, containment or removal of hazardous material." *Id.*, slip op. at 7 (citing *Sheehy v. Lipton Industries, Inc.*, 24 Mass.App.Ct. 188, 507 N.E.2d 781, *review denied*, 400 Mass. 1103, 509 N.E.2d 1202 (1987)). In *Nestor*, as in *Oliveira*, the court classified the section 4 claim as one for reimbursement. Similarly, in *Sheehy* the plaintiff had already expended substantial sums for assessment and removal of the hazardous material. *Sheehy v. Lipton Industries, Inc.*, 507 N.E.2d at 786.

■ The complaint fails to expressly state that American has paid assessment costs. As urged by American, it is nevertheless reasonable to infer that the Pollack litigation necessitated costs associated with information gathering activities to identify the source and nature of the release of chemicals on American's property and to ascertain whether such release caused the contamination in Pollack's neighboring property and well.[13] Accordingly, drawing reasonable inferences in American's favor, American's section 4 claim in Count III is not subject to dismissal for lack of standing.

■ Turning to the second argument, the parties dispute what statute of limitations to apply to American's section 5 claim. In light of *Oliveira v. Pereira*, 605 N.E.2d at 290–291, it is evident that a section 5 claim is properly characterized as a tort and the appropriate statute of limitations is that contained in section 2A. As stated in *Oliveira*, the "essential nature" of chapter 21E *"read as a whole"* suggests that "claims under G.L. c. 21E sound in tort." *Oliveira*, 605 N.E.2d at 290 (emphasis added). The court then cited the example that:

s 5(a) talks of joint and several liability in some instances, and s 5(c)(3) provides an exception to liability where a "person establishes by a preponderance of the evidence that he exercised due care with respect to the oil and hazardous material, that he took precautions against foreseeable acts or omissions of any third party and the consequences that could foreseeably result from such acts or omissions." *Id.* at 290. In applying the three year limitations period in section 2A to a chapter 21E claim under section 4, the above reasoning employed by the court in *Oliveira* necessarily implies that the SJC would reach the same result if faced with a section 5 claim. Accordingly, notwithstanding the unpublished decision cited by American (Docket Entry # 13), *Bolduc Service Centers, Inc.*, C.A. No. 87–996 (Mass.App.Ct. April 15, 1992),[14] this court finds that the three year limitations period contained in section 2A applies to American's section 5 claim in Count IV.

■ In determining the proper accrual date for American's section 5 claim, Massachusetts courts would apply the discovery rule given the nature of the environmental damage claim.[15] As previously noted, American received the DEQE notice on or about December 29, 1986. This notice placed American on reasonable notice of environmental injury to its property caused by spillage of chemicals. This notice further imposed a duty on American to investigate the cause of the spillage and it is reasonable to assume that such an investigation would and should connect the cause of the environmental damage to the conduct of Air Products and/or Union. The three year limitations period of chapter 2A would therefore expire on or about December 29, 1989.

■ Nevertheless, American's complaint additionally alleges damages resulting from

*Bachelder v. Communications Satellite Corporation*, 837 F.2d 519, 523 & n. 5 (1st Cir.1988)); *accord Dayton v. Peck, Stow & Wilcox Company*, 739 F.2d 690, 694–695 & n. 5 (1st Cir.1984) (declining to follow unpublished decision in related case).

13. Should subsequent factual development of the record reveal that American has not undertaken such costs, this court suggests that Air Products and Union file the appropriate motions with sup-

porting factual material. See footnote number nine.

14. The *Boulduc* decision predates the *Oliveira* decision. See footnote number 12.

15. For a discussion of the discovery rule, see pages 13 through 14 and 23 through 24 of this Report and Recommendation.

chemical spills as alleged in the Pollack litigation. Reasonable knowledge on the part of American that its property damage as alleged in the Pollack litigation resulted from chemical spillage would occur no later than 1989. American's claim regarding chemical spills alleged in the Pollack litigation under section 5 is therefore time barred no later than 1992. Inasmuch as the complaint does not distinguish whether the allegations of chemical spillage in the Pollack litigation are limited to those alleged by the DEQE in December 1986, this court will not dismiss American's section 5 claim as untimely on a motion to dismiss. Nor is American's section 4 claim, to the extent it has paid monies for assessment costs, untimely inasmuch as the three year limitations period begins to run on the date of payment of the assessment costs. *See Oliveira v. Pereira*, 605 N.E.2d at 291.

### III. *Count V; Negligence*

As to American's negligence claim, Air Products and Union argue that American either knew or should have known of its injury and its negligence claim no later than December 29, 1989. (Docket Entry ## 4 & 6). American replies that section 309 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), as codified in 42 U.S.C. § 9658 ("section 9658"), provides for the filing of a negligence claim after American determines the cause of its injuries. (Docket Entry # 11).

Tort actions for negligence are governed by the three year statute of limitations contained in section 2A. Mass.Gen.L. ch. 260, § 2A; *Wilson v. Hammer Holdings, Inc.*, 850 F.2d at 8. The statute generally begins to run at the time of the plaintiff's accident or injury. *See Cambridge Plating Company, Inc. v. Napco, Inc.*, 991 F.2d at 25; *Joseph A. Fortin Construction, Inc. v. Massachusetts Housing Finance Agency*, 392 Mass. 440, 466 N.E.2d 514, 516 (1984). When the plaintiff neither knows nor should have known of its injury and its likely cause, however, such as the environmental injury in the case at bar, the discovery rule dictates

that the statutory period begins to run when the plaintiff discovers, or at any earlier date when the plaintiff " 'should reasonably have discovered, that [it] has been harmed or may have been harmed by the defendant's conduct.' " *Cambridge Plating Company, Inc. v. Napco, Inc.*, 991 F.2d at 27 (citation omitted). Thus, under the discovery rule a claim accrues at the time the plaintiff knows or reasonably should know not only of his disease or injury but of its cause. *Albert v. Maine Central Railroad Company*, 905 F.2d 541, 544 (1st Cir.1990). Once the plaintiff is put on reasonable notice that "a particular act of another person may have been a cause of harm," the plaintiff has a "duty of inquiry" and the limitations period begins to run. *Bowen v. Eli Lilly & Company*, 408 Mass. 204, 557 N.E.2d 739, 742 (1990); *accord Cambridge Plating Company, Inc. v. Napco, Inc.*, 991 F.2d at 27–28; *see Dubose v. Kansas City Southern Ry. Company*, 729 F.2d 1026, 1029 (5th Cir.), *cert. denied*, 469 U.S. 854, 105 S.Ct. 179, 83 L.Ed.2d 113 (1984) (noting that once the plaintiff possesses certain critical facts, legal and medical professionals are available to provide advice); *see also Albert v. Maine Central Railroad Company*, 905 F.2d at 544 (citing and quoting *Dubose* ).

Section 9658 of CERCLA employs a provision similar to that of the Massachusetts discovery rule. Provided American's negligence claim is one for: (1) personal or property damage; (2) caused or contributed to by exposure to hazardous substances; (3) released into the environment; (4) from a facility, then the accrual date embodied in section 9658 would preempt the Massachusetts common law discovery rule applicable to American's negligence claim.[16] *See Wager v. BASF Corporation and Lloyd Laboratories, Inc.*, 1990 WL 124069 at *2 (N.D.N.Y. August 24, 1990) (the plaintiff must show the above four elements to invoke "discovery-of-causation accrual date" in section 9658). CERCLA liberally defines the term "facility" to include "any site or area where a hazardous substance has been deposited . . . or

---

**16.** Section 9658 "is intended only to affect the time at which the state statute of limitations begins to run, and not the number of years it

runs." *Bolin v. Cessna Aircraft Company*, 759 F.Supp. 692, 704 & n. 12 (D.Kan.1991).

otherwise come to be located." 42 U.S.C. § 9601(9); *see CP Holdings v. Goldberg–Zoino & Associates,* 769 F.Supp. 432, 438 (D.N.H.1991) (noting that number of courts recognize that Congress intentionally created broad definition of "facility"). Inasmuch as the complaint satisfies, on its face, the above requirements, the discovery accrual date contained in section 9658 governs American's negligence claim.[17]

■ Application of section 9658 to American's negligence claim leads to the conclusion that its claim is not time barred. Section 9658 pronounces that in the event a state statute of limitations:

> provides a commencement date which is earlier than the federally required commencement date, such period shall commence on [the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages ... were caused by the hazardous substance or pollutant or contaminant.]

*Wager v. BASF Corporation and Lloyd Laboratories, Inc.,* 1990 WL 124069 at *2 (quoting and summarizing sections 9658(a)(1) and 9658(b)(4)(A)). As discussed in sections I and II *supra,* American received the DEQE notice on or about December 29, 1986. This notice placed American on reasonable notice of environmental injury to its property caused by spillage of chemicals within the meaning of section 9658. The three year time period of chapter 2A would therefore expire on or about December 29, 1989. *See, e.g., Bolin v. Cessna Aircraft Company,* 759 F.Supp. at 697 & 703 (knowledge of property owner of wrongful act of contamination of water supply for purposes of construing Kansas statute of limitations occurred in July 1985 when state environmental department informed some residents of contamination).

Nevertheless, American's complaint additionally alleges negligence resulting from chemical spills as alleged in the Pollack litigation. Under section 9658, reasonable knowledge on the part of American that its property damage as alleged in the Pollack litigation resulted from chemical spillage would occur no later than 1989. American's negligence claim regarding chemical spills alleged in the Pollack litigation is therefore time barred no later than 1992. Inasmuch as the complaint does not distinguish whether the allegations of chemical spillage in the Pollack litigation are limited to those alleged by the DEQE in December 1986, this court will not dismiss Count V at this time.[18]

## IV. *Count VI; Trespass*

■ Air Products and Union move to dismiss American's trespass claim on the grounds that American fails to assert an intentional, unprivileged entry onto American's property. They point out that any such entry was under a contract to deliver goods which gives rise to a license to enter American's property. Inasmuch as any entry was permissive, neither Air Products nor Union are liable for trespass. Moreover, any resulting discharge of chemicals under the license was unintentional. (Docket Entry ## 4, 6 & 12).

American replies that although Air Products may have been authorized to enter American's property, it was not authorized to spill or release hazardous materials. According to American, Air Products' refusal, upon request, to remove the hazardous material is an intentional act creating trespass liability. (Docket Entry # 11).

Air Products and Union initially rely on the doctrine of trespass *quare clausum fregit* and the principle that trespass requires an intentional act. In *Feeley v. Andrews,* 191 Mass. 313, 77 N.E. 766 (1906), the SJC held that the plaintiff could not recover under an action for trespass *quare clausum fregit* inasmuch as the plaintiffs had hired the defendant to prepare the grave site. Similarly, in

---

17. This court makes this finding solely for purposes of the motion to dismiss based on the complaint and reasonable inferences drawn therefrom. It expresses no opinion regarding the applicability of section 9658 upon a further factual development of the record.

18. Coincidentally, the same accrual date would apply in the event this court applied the Massachusetts discovery rule to American's negligence claim. In light of the statute of limitations issue, this court urges the parties to develop a more complete factual record. See footnote number nine.

*Beers v. McGinnis,* 191 Mass. 279, 77 N.E. 768 (1906), the SJC held that "[t]he defendant did not become a trespasser *ab initio* by his misconduct after his entry made by [the plaintiff's] consent, by virtue of an agreement with [the plaintiff.]" *Beers v. McGinnis,* 77 N.E. at 769.

While Air Products and Union correctly cite the above cases for these principles, a person "entering upon land by license who subsequently abuses his license does not become a trespasser *ab initio,* although he may become a trespasser by committing active and positive acts not included in the terms of his license." *Cartan v. Cruz Construction Company,* 89 N.J.Super. 414, 215 A.2d 356, 359 (1965) (citing *Beers* and finding that *Beers* and other authorities reveal that doctrine of trespass *ab initio* applies only to government and public officials and not to one who commits tortious act after entry authorized by property owner). The real issue then becomes whether Air Products and/or Union exceeded the terms of any license issued by American by permitting the spillage or release of chemicals on American's property. *See Beckwith v. Rossi,* 157 Me. 532, 175 A.2d 732, 736 (1961); *see generally* 75 Am.Jur.2d § 88 (scope of consent in trespass action).

*The Restatement (Second) Torts* § 165 ("section 165"), which is generally followed in Massachusetts, provides for trespass based on negligent acts involving unreasonable risk of invading an owner's interest in his property provided the plaintiff makes a showing of harm. *See Id.,* cmt. c. Although there is no trespass liability for unintentional, non-negligent acts, *Edgarton v. H.P. Welch Company,* 321 Mass. 603, 74 N.E.2d 674, 679–681 (1947) ("unintended intrusion upon the land in possession of another does not constitute trespass"); *United Electric Light Company v. Deliso Construction Company, Inc.,* 315 Mass. 313, 52 N.E.2d 553, 556 (1943) ("trespass requires affirmative voluntary act upon the part of the wrongdoer and in that respect differs from negligence"), trespass liability may be premised upon a negligent mistake or mishap under section 165 upon a showing

of harm. *Cf.* 37 Joseph R. Nolan & Laurie J. Sartorio *Massachusetts Practice* (1989) § 51 (discussing *Edgarton* which unambiguously requires voluntary act of entry) and *Id.* § 53 (citing section 165); *see also J.D'Amico, Inc. v. City of Boston,* 345 Mass. 218, 186 N.E.2d 716, 720 (1962) (declaration of rights action under insurance policy for trespass coverage noting agreed facts warranted conclusion that trespass was based on mishap or mistake); *see, e.g., Sterling v. Velsicol Chemical Corporation,* 647 F.Supp. 303, 318–319 (W.D.Tenn.1986), *aff'd in part, rev'd in part,* 855 F.2d 1188 (6th Cir.1988) (liability imposed against owner of landfill for release of chemicals under trespass theory, albeit under Tennessee law, citing section 165).

Thus, although the law in Massachusetts is not altogether clear with respect to liability for negligent trespass, it is not as clear cut as Air Products and Union would have this court believe.[19] The complaint reasonably infers that Air Products and/or Union had a license to enter American's property to complete the sale and delivery of chemicals. The complaint states that as a result of defendants' failure to use due care in handling the hazardous materials, defendants allowed the release and spillage of chemicals. Whether Air Products and/or Union exceeded the scope of any such license cannot be determined as a matter of law on the basis of the motions to dismiss. Nor can this court adequately evaluate whether the chemical spills were the result of negligent acts outside the scope of the license sufficient to create liability under section 165. American's trespass count therefore survives Air Product's and Union's motions to dismiss.

## V. *Count VII; Nuisance*

■■■ Air Products and Union correctly maintain that an action for nuisance cannot be asserted by American to recover damages for a condition located on American's property. Massachusetts law recognizes a nuisance action "when a property owner creates, permits, or maintains a condition or activity on his property that causes a substantial and unreasonable interference with the use and

---

**19.** In light of the unsettled nature of Massachusetts law, the parties are invited to further brief the matter should they file motions for summary judgment.

enjoyment *of the property of another."* *Wellesley Hills Realty Trust v. Mobil Oil Corporation,* 747 F.Supp. 93, 98 (D.Mass. 1990) (emphasis added). Inasmuch as "Mobil's contamination of its own property did not and does not interfere with ... the property of another," the court in *Wellesley* dismissed the nuisance claim on a Rule 12(b)(6) motion. *Id.* at 98–99.

American attempts to distinguish *Wellesley* on the basis that the case at bar does not involve a vendee/vendor relationship. Notwithstanding the lack of authority cited by American to support this assumption, this court finds *Wellesley* controlling thereby disposing of American's claim under Count VII for nuisance.

### VI. *Counts II & VIII; Declaratory and Injunctive Relief*

Air Products and Union argue in favor of dismissing counts II and VIII for declaratory and injunctive relief on the basis that these counts are derivative of Americans other claims. (Docket Entry ## 4 & 6). In light of this court's resolution of American's other claims, dismissal on this basis is improper.

### CONCLUSION

In accordance and as provided in the foregoing discussion, this court RECOMMENDS[20] that Air Products' motion to dismiss (Docket Entry # 3) and Union's Motion to Dismiss (Docket Entry # 5) be **ALLOWED** in part and **DENIED** in part and that Count VII be **DISMISSED.**

---

**20.** Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within ten days after service of the objections. Failure to file objections within the specified time waives the right to appeal the district court's order. *United States v. Escoboza Vega,* 678 F.2d 376, 378–79 (1st Cir.1982); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986).